FROM ROBESON.
DANIEL, J., charged the jury that they ought to ascertain whether the defendant bit off the ear on purpose; and if on purpose, whether it was with the intent of disfiguring Munroe; and in ascertaining that intent, the fact that he had actually bitten off the ear was a circumstance from which the intention to disfigure might be inferred, unless that inference was rebutted by other evidence. That if the defendant did the act to save his own life, or to prevent great bodily harm to himself, they ought to acquit him. A verdict was returned for the State, and the defendant appealed.
The act of 1791, upon which this indictment is framed, received a contemporaneous exposition by very able judges, which (426) I conceive is authoritative, even if there be doubts on the act itself. S. v. Evans, 2 N.C. 281, was decided in 1796 by Judges HAYWOOD and STONE, and has been supposed heretofore to have settled this question. I see no reason now to disturb it, but entirely yield my assent to that case. They held that the first blow, or a sudden affray, did not palliate the offense under the act; for if it did, the statute would be of little avail. Almost all such maimings take place, not after lying in wait, and with deliberate intent, but in sudden encounters. The very object of the Legislature was to suppress this barbarous mode of fighting. If, therefore, a maim is perpetrated, the enormity of the act itself and the impossibility almost that it should not be done with the intent to perpetrate it creates the presumption that the offender did the act on purpose and with intent to maim. This presumption arises out of the fact, and needs no further proof to create it. But it may be rebutted by the defendant. This can be done by showing that he did it in extremis, in the exercise of the natural right, and in the instinctive effort to defend himself, and as the only means of doing so; or that it was accidental, or not within the probable consequences of what he did; as if the ear were severed by falling against a sharp instrument, or the like. But certainly the burthen of removing the inferences thus morally probable is thrown on the accused. For everything is to be taken against a man who voluntarily maims another.
It is insisted, however, that although the act uses the words "on purpose," something more is meant than merely a voluntary act; and that it requires "malice aforethought," because subsequently, in the same *Page 275 
section, it says, "with intent to murder or maim." An argument is likewise drawn from the first section, which is against cutting out the tongue, or putting out an eye with malice aforethought, and (427) makes it felony for the second offense. It is said that as the second section relates to other members — namely, the nose, lip, ear, etc., (not including the tongue or eye), a maiming of these last with malice aforethought is not punishable at all under the statute, or not more grievously than if not done with malice aforethought, but only on purpose; and that this is unreasonable. I answer as to the difference between the two sections that the Legislature intended it. If they had not, they would have used the same words, denoting the disposition in both. But in the first they make maiming of particular members with malice a felony, and in the next maiming other members "on purpose" an aggravated misdemeanor. The difference of phraseology in the same statute in reference to different acts evinces a corresponding difference in the sense. If the second section meant malice aforethought, why does it not say "malice aforethought?" This observation satisfies me of the intention of the Legislature. I have no right to enquire further why they did not also make a malicious maiming of the nose a felony, or punish it more severely than a maiming of the nose on purpose. I must take the act as it is. But I suppose the Legislature did not intend to affix to the maiming of any of the members mentioned in the second section, with whatever disposition effected, a greater punishment than there specified. That was thought a sufficient protection of them; or, as the offense was almost always committed in affrays on the sudden, some regard might have been had to the excitement of passion, under which the perpetrator labored.
The other objection, grounded on the words, "with intent to murder," has embarrassed me more. But, I think, they also are susceptible of an explanation which will make them harmonize with the rest of the clause. These words were probably introduced for the purpose of obviating the doubts raised in Coke Woodburne's case (4 Bl. Com., (428) 207) upon the Coventry Act. I do not think they ought to have any other effect than to prevent a party from saying he did not maim with intent to maim, but with intent to commit the higher offense of murder; and if the maiming take place without the design of committing that higher offense, then the disposition essential to the crime of murder, is not to be required to enter into the inferior offense. The maiming forbidden by this section is that done "on purpose," with intent to murder or maim. The intent to murder can only exist where the party is actuated with malice prepense. But if that exist, it includes "on purpose"; if the defendant maimed with intent to murder, he maimed on purpose. So far, therefore, the act is consistent, and certainly, when the *Page 276 
intent laid in the indictment is to murder, the act must be proved to have been done with malice prepense. But I perceive no reason, when the intent to do another act — namely, to maim, in which malice prepense
in a legal sense is not a constituent principle is charged, to say that it also must be done with malice, when the statute comes short of it and declares the act a crime, if done on purpose. To maim with intent to murder is to be actuated by malice; to maim with intent to maim, is to do it on purpose — voluntarily. This last species of crime is complete, if perpetrated wittingly and willingly without accident, or without pressing necessity. But even if the argument for the defendant be allowed so far as to make malice a necessary ingredient of each criminal act forbidden in either section, it may well be asked what is malice in reference to this subject? Does it mean an actual, express, or preconceived disposition to do his adversary the particular injury inflicted? I suppose not. But it is used in that enlarged and legal sense, which imports the intent or disposition at the moment to do without lawful authority and without necessity that which the law forbids. And how does an act done on purpose and without the pressure of necessity (429) differ from that? To me it seems that if it be done on purpose, it is done with malice, so far as relates to this matter, although it might not be under such circumstances as would constitute murder; and that malice prepense, technically speaking, need not be shown, except when the maim is laid to be with intent to murder. An act of such cruel vengeance, by the selecting, as it were, a particular member for mutilation, imports a bad heart, and some degree of deliberation, though the incitement arise in actual combat. Such was Lord Coke's opinion upon the maiming statute of 5 Henry IV, ch. 5. That statute declares that "offenders who cut out the tongue, or put out the eye of any, and it be duly proved and found that such deed was done of maliceprepense, shall incur the pain of felony." In commenting on it, Lord Coke says if the act be done voluntarily and of set purpose, however sudden the occasion, it is within the statute. 3 Inst., 62. The correctness of this exposition is strongly to be inferred from the provision of statute 37, Henry VIII, ch. 6, which are that if any person maliciously, wilfully, and unlawfully, cut off the ear of another otherwise than by sudden affray, etc. This clearly shows that the "sudden affray" would have been within the previous words, descriptive of the intent; and hence it became necessary expressly to except it.
I therefore think the judgment below right.