## STATE v. WILLIAM SKIDMORE.

*Assault and Battery—Evidence—Maim—Judge's Charge.*

1. In assault and battery, evidence of previous threats of personal violence against the defendant by the prosecutor, is inadmissible—*State* v. *Norton,* 82 N. C , 628, approved.

2. Upon trial for an indictment for maim, it appeared that while the parties were engaged in a fight, the defendant bit off a part of one of prosecutor's ears, and the judge charged it was incumbent on defendant to satisfy the jury that the act was done in self-defence ; *Held* no error.

3. *Held further* : It was not error to refuse to charge that, if the severance of the ear while in defendant's teeth resulted from the violent manner in which the parties were separated, it would not be a maim done "on purpose and with intent to disfigure"—for this the law presumes when the act is proved.

(*State* v. *Crawford,* 3 Dev., 425 ; *State* v. *Girkin,* 1 Ired., 121 ; *State* v. *Norton,* 82 N. C., 628 ; *State* v. *Evans,* 1 Hay., 325, cited and approved.)

INDICTMENT for maim tried at Spring Term, 1882, of GASTON Superior Court, before *Gudger. J.*

Verdict of guilty, judgment, appeal of defendant.

*Attorney General,* for the State.
*Messrs. Hoke & Hoke,* for defendant.

SMITH, C. J. The defendant is charged with the offence of biting off the ear of L. B. Rankin without malice, but on purpose and with intent to disfigure him, and upon the evidence was convicted by the jury. The indictment was framed under a statute which enacts, that,

If any person shall on purpose and unlawfully, but without malice aforethought, cut or slit the nose, bite or cut off a nose, or lip, or ear, or disable any limb or member of any other person, or cut off, maim or disfigure any of the privy members of any other person with intent to kill, maim, disfigure, disable or render impotent such person ; in any such case the person so offending shall, on conviction thereof, be imprisoned at least six months and fined at the discretion of the court. Bat. Rev., ch. 32, § 48.

The previous act of 1791, which describes the maim therein intended as done " of malice aforethought," had been interpreted to include the case of a maim perpetrated without any preconceived malicious purpose, if intentionally perpetrated by the accused, the malice being necessarily involved in the act of maiming, in the case of *State* v. *Crawford*, 2 Dev., 425. The words introduced in the revised act of 1837, " with malice aforethought," were, say the court in *State* v. *Girkin*, 1 Ired., 121, doubtless with the view of giving to this latter act the same sense in which the former had been received by judicial construction ; in other words the legislature approved of the interpretation adopted by the court and meant to incorporate it as a distinct and express enactment of the statute.

The evidence heard on the trial, needlessly diffuse as set out in the record, was in substance as follows :

The parties began an altercation about money due to the prosecutor by the defendant and the demand of payment, which progressed in the interchange of angry words until the prosecutor swore he could whip the defendant, and the latter in response said " all right." Thereupon both rose

up, the defendant walking off and followed by the prosecutor who just before had a knife in his hands with which he was whittling, but was not seen then with it. The defendant said to him, "don't come at me," and the prosecutor continuing to advance, the defendant gave him a blow with a stick and then with his fist, when they clinched in fight, fell to the ground, and were pulled apart by others who were present and witnessed what took place. It was then discovered that a portion of the prosecutor's ear had been bitten off and was lying on the ground.

The defendant's own version of the affair, given upon his examination on his own behalf before the jury, differs not materially from the testimony of his other witnesses, except that he stated the prosecutor held a knife while following him up and first struck at him, whereupon the defendant gave the successive blows with the stick and with his fist, and they clinched and in the scuffle fell and he bit the prosecutor.

During the trial the defendant proposed to show the previous utterance of threats of personal violence against himself by the prosecutor, of which he had received information, but the evidence was ruled out as incompetent, and the first exception is to this ruling.

The counsel for defendant in argument contended, as we infer to be the import of the expression used by His Honor —"the theory of the defendant was," that the mutilation of the ear was an act of self-defence, or that in the excitement of the fight it was not done "on purpose," and the severance of that part of the ear was brought about by their violent separation.

The jury were instructed that inasmuch as the mutilation of the ear by the defendant was admitted, it was incumbent on him to satisfy them that it was done in self-protection, and they must determine whether the act was

necessary in defence of his own person, and if such necessity did not exist the defendant should be found guilty.

The court refused to charge, when so requested, that if the defendant in the midst of the fight seized the ear in his teeth with a view to his own defence, and while so holding it he was jerked away from his adversary and by this means the part of the ear was separated, the defendant would not be guilty of the offence imputed.

These are the errors assigned in the record for our consideration.

1. The rejection of antecedent and communicated menaces of personal violence uttered by the prosecutor, is fully warranted by the ruling in *State* v. *Norton*, 82 N. C., 628. There, the state was not permitted to show threats made by the defendant two weeks before committing the assault, for the reason as stated by the court that the inquiry is into a charge of assault and battery, and that "the guilt or innocence of the defendant depended upon the facts and circumstances immediately connected with the transaction." If incompetent to fix the guilt of the accused, still less would threats proceeding from the stricken and injured party (*res inter alios actæ*) be admissible to excuse the criminal misconduct of the defendant in committing the maim upon his person.

2. While the specific instruction requested was denied, the jury were directed to inquire and say whether the seizure of the prosecutor's ear in the teeth of the defendant was required for his own defence, in a fight which, upon all the testimony, except so far as modified in that of the defendant himself, was begun by a blow from a stick, and then from his fist upon the person of the prosecutor then pressing forward towards the defendant; and this, at least, was quite as favorable as could be asked for the defendant. There was no proof as to the condition of the parties struggling upon the ground, beyond the fact of the fight itself,

from which it can be seen that such necessity pressed upon the defendant; and he certainly cannot complain that the jury were left at liberty to infer that biting the ear off was or might be an act of self-defence.

3. Nor was their error in omitting an instruction that if the ear was severed while in the defendant's teeth by the violence of those who pulled him away, it would not be a maim " done on purpose " and " with intent to disfigure," within the sense of the enactment. If the biting was intentional and the severance resulted from the manner in which the combatants were parted, it would be none the less the act of the defendant, and no more less excusable than if it had been effected by the struggling efforts of the prosecutor to escape from his grasp. The primary and essential cause of the personal mutilation is the intentional biting of the defendant, and upon him devolves the responsibility for its consequences.

When the act itself is proved, the law will presume it was done on purpose and with intent to maim, as it actually was a maim till the evidence showeth the contrary. *State* v. *Evans*, 1 Hay., 325; 2 Whar. Cr. Law, § 1173 and cases cited.

Undoubtedly, if, in striking with a sharp instrument or shooting at the person without any distinct aim or intention directed to the member, the mutilation of which when intentionally done would constitute maim, such member should be hit and severed, this would be not considered a maim committed on purpose in the words of the statute, to which some force must be given. But if the member was the object of the assault, and was in fact cut off and severed, it could in no proper sense be said to be accidental, and the defendant would fall under the condemnation of the act.

We discover no error in the record, and this must be certified to the end that the court may proceed to judgment upon the verdict.

No error. 　 Affirmed.