STATE v. JOHN GOFF, JAMES KEARNEY, AND FRANK KEARNEY.

*Indictment for Affray—Witness—Impeachment—Testimony, Competency of—Evidence of Motion.*

1. Where, in the trial of four persons indicted for an affray, three of them testified and the fourth, their antagonist, was called in his own behalf, the other defendants had the same right to impeach him on cross-examination as though he had been a witness intead of a co-defendant.

2. On the trial of several persons for an affray, testimony that one of the defendants who was the antagonist of the others had stated to third persons on the day of the difficulty that, if one of the other defendants should come to his house that night, he would kill him, was admissible for the purpose of impeachment but incompetent to prove motive.

3. It is error to exclude testimony offered for several purposes if it is competent for one of the purposes.

4. Error in excluding testimony which is competent for the purpose of impeachment can only be remedied by *venire de novo* though the facts excluded may have been subsequently brought out by other witnesses.

STATE *v.* GOFF.

INDICTMENT for affray, tried before *Graham, J.,* and a jury, at Spring Term, 1895, of GREENE Superior court.

The four defendants were tried jointly for the affray charged. Two witnesses were introduced on the behalf of the State.

Henry. Gerganus, the first State's witness called, testified substantially as follows : I am a cousin of the defendant Gerganus ; am distantly related to him. This difficulty occurred at his house on the night of the 2d of last January. The defendants and I were all under the influence of liquor ; had been drinking wine at the wine shop about 400 yards from defendant Gerganus' house ; John Goff and the Kearneys became noisy, and the defendant Gerganus ordered them to leave his house. They did so, and the door was closed and fastened. Soon they returned, with rails and pieces of scantling, to the door and beat upon it and forced it open. Defendant Goff came in first and seized defendant George Gerganus and threw him and held him down, and the Kearneys soon followed him into the house, one of them, James Kearney, I think, having a fence rail. Nora Gerganus, daughter of the old man (meaning defendant Gerganus) pulled Goff off her father. The old man George had a gun in his hand when he ordered Goff and the Kearneys to leave, and also when they returned. When they (Goff and the Kearneys) were leaving the house, the old man fired off his gun at the door, holding the muzzle up almost straight, and I don't think he shot at any one. He also had a pistol, and while they had him down he drew his knife. Goff got cut in the face during the difficulty. I don't know who cut him. The two Kearneys are brothers. One of them, Frank, is a son-in-law of defendant John Goff.

Joe Goff, the witness next examined on behalf of the State, testified substantially as follows : "I am a son of

the defendant John Goff. He and I were invited to that house that night by defendant Gerganus. The old man (defendant) Gerganus was very much intoxicated, and all of us were under the influence of liquor. Defendant John Goff, turning sick from the effects of the wine, one of the defendant Gerganus' daughters arranged the bed in the front room for him to lie down on. He lay cross-wise, with his feet off the bed. At the request of the old man (defendant Gerganus) the defendant John Goff gave him permission to take his horse and road cart to go to a neighbor's house, about a mile and a half distance. I accompanied him. We got back about 11 o'clock. When we returned, defendant John Goff was asleep and still lying across the bed. Defendant Gerganus pulled off one of defendant Goff's boots, and this awoke him. At this time a quarrel arose between defendant Gerganus and his daughter Nora, and both used very angry words to each other. She had a hatchet raised, and her father slapped her, or slapped at her. At this point, the defendant Goff, who had then become sober, rose up and tried to pacify the old man and his daughter. The defendant Gerganus then became greatly enraged, and seemed to be crazed from drink and anger and he seized a gun and walked into the adjoining room and talked with Henry Gerganus about fifteen minutes. Then he came into the front room, gun in hand, and ordered all the other defendants out of the house. The defendants James and Frank Kearney were the first to go out, and defendant Goff followed. As defendant Goff went to pass out, the old man fired off his gun towards him, and the door was suddenly pushed by some one inside, thereby pressing one of the defendant Goff's legs between the door and facing. Then defendant Goff turned his face towards the door and pushed it away, to release his leg, and there stood defendant Gerganus with

his gun in one hand and pointing a pistol at the defend-
ant Goff with the other.    Thereupon defendant Goff
seized defendant Gerganus and pushed him backward
toward the bed, laying him down upon the bed and hold-
ing him down and trying to take the pistol from him,
and at the same time he called for help to take the pistol
from Gerganus.    He had already got the gun from his
grasp and threw it on the floor.    When he called, Jim
Kearney and Frank Kearney came in and helped defend-
ant Goff to disarm Gerganus.    In this struggle the defend-
ant Gerganus drew a knife from his pocket with his left
hand, and on rising he cut defendant Goff, giving him a
severe and dangerous stab on the left cheek.    Thereupon
Goff pressed Gerganus down on the floor and kicked the
knife out of his hand.    Then defendants Goff and James
and Frank Kearney left and I went off with them.    Neither
of them was armed, nor made any effort to use any weapon
or hurt Gerganus, and neither one of them used any more
violence or force than was necessary to disarm Gerganus.
They did not force the door or attempt to break in, nor
enter after they were ordered out, except to aid in taking
away the weapons of the defendant Gerganus.

  · Here the State rested its case.

    The defendants, John Goff and James Kearney, were then
sworn and examined on their own behalf, relating the facts
of the difficulty, in all material points, as the State's wit-
ness, Joe Goff, had done.    Then they introduced some
character evidence, and rested their case.

    The defendant Gerganus' name occurring last in the
indictment, his witnesses were examined after the conclu-
sion of the evidence for the other defendants.    The defend-
ant Gerganus was the last witness examined on his own
behalf.    He testified (among other things) that, one of his
daughters objecting to the noise in the house and the

STATE *v.* GOFF.

intoxication of the visitors, he ordered the other defendants to leave, whereupon they did so, but that they returned and beat on the door, swearing their purpose to break in, and that at last they forced open the door and re-entered the house ; that, as they were going out, he had discharged his gun out of the door, shooting upward, his purpose being to discharge the load, so that the gun could not be used by the other defendants ; that on the re-entry of the other defendants, the defendant Goff seized him violently and struck him on the forehead, inflicting a severe hurt, and they beat and bruised him as they held him down on the bed, causing him to bleed freely, and his clothes were cut in several places ; that some of the defendants had knives in their hands ; that he, himself, did have the pistol in his hands, but it was only for the protection of himself and his family ; that he does not remember cutting the defendant Goff, and does not know how that cut was inflicted, etc.

During the defendant Gerganus' cross-examination, he was asked by the counsel for defendants Goff and Kearneys this question, namely, "On the day of the night of that difficulty, did you not tell Merrimon Ginn at your house that if Goff and his friends came to your house that night, you would kill you a man ?" The witness answered that he did not.

He was then asked, on behalf of the same defendants, this question, namely, "On the same day and at the same place, did you not tell Thomas Kearney that you were expecting John Goff at your house that night, and that if he came, you would kill him, or hurt him badly ?" This was also answered in the negative.

On the conclusion of the testimony on behalf of the defendant Gerganus, no further evidence being offered by the State, the defendants, John Goff, James Kearney and Frank Kearney, called in Merrimon Ginn and Thomas Kear-

ney, the persons referred to in the cross-examination of defendant George Gerganus, and both of whom had been duly sworn.

His Honor inquired for what purpose were those witnesses called in.

The counsel for said Goff and the Kearneys informed the Court that he proposed by these witnesses to contradict defendant Gerganus, as to the threats referred to, and to prove the declarations of defendant Gerganus, as set out in the questions specified, and this was to show the *animus* of that defendant towards the defendants, John Goff and James and Frank Kearney, as affecting his testimony, as to account for his conduct on the night of the difficulty.

The said Merrimon Ginn was then first offered with that view.

The Court refused to permit the witness to testify on the point named, and stated that it would not allow the proposed testimony from either of the witnesses, as the matter was collateral.

The defendants, John Goff, James Kearney and Frank Kearney, excepted to this ruling of his Honor.

Verdict of "Guilty," against John Goff, James Kearney and Frank Kearney, "Not Guilty" as to Gerganus. Judgment against the convicted defendants, who appealed.

*The Attorney General*, for the State.
*Messrs. Swift Galloway* and *J. B. Batchelor*, for defendants (appellants).

AVERY, J. : This was an indictment for an affray in which the theory of the State was that the defendants John Goff and the two Kearneys were the guilty combatants on the one side, and the defendant Gerganus who was acquitted by the jury was a willing participant on

STATE *v.* GOFF.

the other side.   After offering two witnesses on behalf of
the State, the solicitor, following the usual practice, rested
and gave the parties the opportunity each to. offer testi-
mony criminating his antagonist or antagonists in order to
exculpate himself.   In such a contest the witnesses for the
one side stand, as to the parties cn the other, in the rela-
tion of prosecuting witnesses and defendants, and hence it
is the universal practice to compel them to submit to cross-
examination with all of the rights which are incident
thereto when they are examined in chief on behalf of the
State.   The appellants had introduced their testimony and
when Gerganus was upon the stand, as the witness in his
own behalf, the other defendants had the same right to
impeach him on cross-examination as though he had been
a witness on behalf of the State instead of a co-defendant.
The State might have impeached him (*State* v. *Efler*, 85
N. C., 585) and the same privilege should have been
allowed to his co-defendants.   If the questions propounded
by the counsel for defendants tended to elicit testimony
showing the temper and bad blood of Gerganus towards his
co-defendants and was offered, not alone as substantive
testimony against him as a defendant, but also in order to
impeach him as a witness, it was unquestionably compe-
tent to examine the witnessses, whose names had been
mentioned in connection with the time and place of mak-
ing the declarations, to contradict his denial that he made
them.   *State* v. *Patterson*, 2 Ired., 346 ; *State* v. *Sam*, 8
Jones, 150.   The history of the ruling excepted to and
assigned as error, as it appears in the statement of the case,
is as follows: "During the defendant Gerganus' cross
examination he was asked by counsel for defendants Goff
and the Kearneys this question, namely, 'On the day of
the night of that difficulty, did you not tell Merrimon Ginn
at your house that if Goff and his friends came to your

house that night you would kill a man?' The witness answered that he did not. He was then asked on behalf of the same defendants this question, namely, 'On the same day and at the same place did you not tell Thomas Kearny that you were expecting John Goff at your house that night and if he came you would kill him or hurt him badly?' This was also answered in the negative. On the conclusion of the testimony on behalf of Gerganus no further evidence being offered by the State the defendants John Goff, James Kearney and Frank Kearney called in Merrimon Ginn and Thomas Kearney, the persons referred to in the cross-examination of defendant Gerganus, and both of whom had been duly sworn. His Honor inquired for what purpose were those witnesses called in? The counsel for Goff and the Kearneys informed the court that he proposed by these witnesses to contradict Gerganus as to the threats referred to and to prove the declaration's of Gerganus as set out in the questions specified, and this was to show the *animus* of that defendant towards John Goff and James and Frank Kearney as affecting his testimony, as well as to account for his conduct on the night of the difficulty. Merrimon Ginn was then first offered with that view. The court refused to permit the witness to testify on the point named, and stated that it would not allow the proposed testimony from either of the witnesses as the matter was collateral. Defendants John Goff and James and Frank Kearney excepted to this ruling.

If the testimony was competent for either of the purposes indicated by counsel for the appellants, it was error to exclude it. It was clearly not competent to explain the conduct of Gerganus by connecting it with proof of motive. The guilt or innocence of Gerganus depended entirely upon the facts and circumstances connected immediately with the transaction. *State* v. *Norton*, 82 N. C.,

628; *State* v. *Harrell*, 107 N. C., 944; *State* v. *Skidmore*, 87 N. C., 509.    If the court had admitted the testimony to contradict Gerganus it would have become necessary to caution the jury to consider it only for the purpose of impeaching.    But it is not the less error to exclude testimony offered for a purpose for which it is competent, because coupled with that order is a proposition which is not tenable to admit it on another ground.    Such an error is not cured even by allowing other witnesses to testify to the very same facts which were excluded on a cross examination but, said PEARSON, C. J., in *State* v. *Murry*, 63 N. C., 31, "can only be remedied by *venire de novo*."    It is true that Gerganus testified to facts which if believed would have corroborated the defendant Gerganus, and tended to show that John Goff and the two Kearneys fought willingly.    But the jury, if they believed the other witness for the State, Joseph Goff, might have inferred that the other defendants did not fight willingly and used no more force than was necessary to disarm the defendant Gerganus and provide for their own safety.    They all testified to substantially the same state of facts as Joseph Goff.    As the testimony of Henry Gerganus and his kinsman would, it seems, if believed, have left no doubt as to the guilt of the other three, it was all important in view of such a conflict that the three appellants should have the benefit of any competent impeaching testimony.    *Non constat*, if it had been admitted, but that Gerganus might have been found guilty, and they might have been acquitted.    It may be that the testimony of Henry Gerganus going to the jury as it did, unimpeached and corroborated by that of Henry, led them to give credit to him instead of to Joseph Goff and the three appellants.    Whatever would have been the result, if no erroneous ruling had been made, or whatever may be the conse-

quence hereafter, it seems clear that the appellants have been deprived of testimony, of which we know not the weight or worth, to the benefit of which they are justly entitled. The cases of *State* v. *Ballard*, 97 N. C., 443, and *Clark* v. *Clark*, 65 N. C., 655, are not in conflict with the principles we have stated as governing this case. There was no proposition in the case at bar to go into particulars of other transactions or difficulties and set them up as tending to show bias. In such case the danger of raising numberless issues to distract the minds of the jury would be obvious. But the proposition was to prove a threat of bodily harm to be carried into execution on that night and at his own house where the difficulty occurred. While this was not competent as evidence of motive, it was admissible to show temper. We conclude that the appellants are entitled to a *venire de novo*.