STATE v. KIMBRELL.

(Filed 24 November, 1909.)

**Assault and Battery—Previous Threats—Res Gestae—Impeaching
Evidence.**

Previous threats are not competent as substantive evidence
except in cases of homicide, and then only when self-defense is
alleged or the evidence is circumstantial. Upon the trial for an
assault with a deadly weapon all that is pertinent is what took
place at the time or so near thereto as to be ·a part of the *res*

*gestae;* and in this case no error was committed by the trial judge, at least, to defendant's prejudice, in confining the evidence of a witness to the impeachment of the evidence of the prosecuting witness, that the latter had previously made threats against the defendant, which had been communicated to defendant.

WALKER, J., dissenting.

APPEAL from *Councill, J.,* August Term, 1909, of MECKLENBURG.

The defendant was indicted and found guilty of an assault with a deadly weapon. The evidence of the State was to the effect that while Charles Thomas, prosecuting witness, was in the Driving Club, in Charlotte, defendant came into the club and, without warning, provocation or excuse, shot Thomas five times, inflicting upon him most serious bodily wounds. Two shots were fired after Thomas had fallen to the floor.

The evidence of the defendant was that there had been a quarrel at the fair grounds, the morning before the shooting, between the defendant's brother, Charles Thomas and Felix Thomas, in which Charles had offered defendant's brother, Sam Kimbrell, $10 to hit Felix, and had cursed defendant, who was not present. He further offered evidence that, before the shooting, Sam Kimbrell had communicated these facts to him, and that, after having taken two drinks of beer with Charles Thomas, defendant started to leave the Driving Club, when Thomas grabbed him by the shoulder and said, "Now, God damn you, I will settle with you"; whereupon defendant shot Thomas four or five times. Defendant then offered to prove by one John Ward, Jr., that, a short time prior to the shooting, Charles Thomas had said to him (witness) that defendant owed his (Thomas') sister $200, and that he would either have to pay it back or he would "fix him" if he crossed his path, and that this threat was communicated to the defendant prior to the shooting.

Upon objection by the State, the court refused to allow the evidence to be received as substantive evidence, but only for the purpose of impeaching the witness Thomas. This was excepted to, and constitutes the only exception in the case.

*Attorney-General* and *George L. Jones* for the State.

*T. L. Kirkpatrick, F. R. McNinch* and *Burwell & Cansler* for defendant.

CLARK, C. J. The only question raised by this appeal is as to the competency of the evidence of previous communicated threats of violence, made by the prosecutor against the defendant. The point has been settled by repeated decisions of this Court that previous threats are not competent as substan-

tive evidence, except in cases of homicide. *State v. Norton,*
82 N. C., 628, cited and approved in *State v. Skidmore,* 87
N. C., 509; *State v. Harrell,* 107 N. C., 946; *State v. Goff,* 117
N. C., 762. There are many others to the same effect.

The principle and the reasons given are stated so clearly in
the above and other cases, and are so well known and adhered to,
that we need only refer to these cases. All that is pertinent to
show in cases of assault and batteries and affrays is what took
place at the time, or so near thereto as to be part of the *res
gestae.* From that the jury can determine whether the parties
fought willingly or in self-defense. To admit evidence of pre-
vious quarrels or threats in such case would consume the time of
the courts for no good reason.

In homicide cases, evidence of previous threats is admissible,
but only if the killing was in self-defense or the evidence is cir-
cumstantial. *State v. Turpin,* 77 N. C., 473; *State v. Hensley,*
94 N. C., 1021; *State v. Byrd,* 121 N. C., 684.

But in assault and battery the evidence is usually direct—not
circumstantial—and both parties can testify, and the jury can
judge of what the parties did, without a narration of their
wrangles and quarrels at other times and places. The defendant
got all the benefit of the evidence which he was entitled to, when
the judge admitted the testimony of previous threats by the
prosecuting witness as impeaching testimony. Besides, a threat,
if made, to "fix" the defendant, was too indefinite to authorize
or justify the defendant to walk up and fire five shots into the
prosecutor, without warning or provocation, according to the
State's evidence, or, according to the defendant's own evidence,
after taking two drinks with the prosecutor, to shoot him five
times when he grabbed him by the shoulder. The jury were
fully competent to decide, upon the evidence before them,
whether the defendant was acting in self-defensne or not, and
they found he was not. It is singular that such a defense can be
urged, when the evidence is uncontradicted that the defendant
shot the prosecutor five times at close range and twice after he
fell to the floor—when, too, there was no evidence that the
prosecutor used or even had a weapon.

No error.

WALKER, J., dissenting: It has been greatly surprising to
me—and I say so with all possible deference and respect for my
brethren—that the Court has decided this case adversely to the
defendant. I do not always agree with them in their opinion as
to the law, but sometimes, when I do differ with them, I do not

enter my dissent, believing it better, in the interest of justice and also certainty of what the law is, to concur with them *sub silentio,* rather than have it appear that the Court is not a homogeneous body, and thereby weaken the force and strength of the opinion of the Court by an attack upon its soundness in the statement and application of a legal principle. Such cases are rare, and I never withhold a formal dissent if the case establishes anything like an important precedent, but do so when the peculiar combination of facts in the particular case is not at all likely to be presented again and the decision is practically a mere declaration of the law of the special case. I would always prefer to agree with my associates than to dissent from their views, for many reasons, among others, because they are better qualified than I am to decide what the law is; but in this case I am so constrained by my sense of justice and right and my conviction as to what the general principle is, as it should be applied to the facts appearing in the record, that I would fail in the performance of my duty as a judge if I did not express my own views, which are so much at variance with those of the Court. I intend to adopt as the expression of my opinion, in part, what is so ably and forcefully said by the Attorney-General, who, as I have said more than once before, is always fair and always just in the argument of cases before us in behalf of the State, and as able and learned as the best. He says: "The defendant was indicted and found guilty of an assault with a deadly weapon. The evidence of the State was to the effect that while Charles Thomas, the prosecuting witness, was in the Driving Club, in Charlotte, defendant came in the club and, without warning, provocation or excuse, shot Thomas five times, inflicting upon him most serious bodily wounds. Two shots were fired after Thomas had fallen to the floor."

The evidence of the defendant was that there had been a quarrel at the fair grounds, the morning before the shooting, between the defendant's brother, Charles Thomas and Felix Thomas, in which Charles had offered defendant's brother, Sam Kimbrell, $10 to hit Felix, and had cursed defendant, who was not present. He further offered evidence that, before the shooting, Sam Kimbrell had communicated these facts to him, and that, after having taken two drinks of beer with Charles Thomas, defendant started to leave the Driving Club, when Thomas grabbed him by the shoulder and said, "Now, G—d d— you, I will settle with you," whereupon defendant shot Thomas four or five times." Defendant offered to prove by one John Ward, Jr., that, a short

time prior to the shooting, Charles Thomas had said to him (witness) that defendant owed his (Thomas') sister $200, and that he would either have to pay it back or he would "fix him" if he crossed his path, and that his threat was communicated to the defendant prior to the shooting.

Upon objection by the State, the court refused to allow the evidence to be received as substantive evidence, but only for the purpose of impeaching the witness Thomas. This was excepted to, and constitutes the only exception in the case.

It is not disputed that, in homicide cases, evidence to show that the deceased had threatened the life of the prisoner is competent in this State:

1. When it appears that the killing was done in self-defense.

2. If the evidence of the killing is wholly circumstantial. *State v. Turpin,* 77 N. C., 473; *State v. Hensley,* 94 N. C., 1021; *State v. Byrd,* 121 N. C., 684.

The same seems to be the law in many of the other States with reference to an assault and battery, as well as in cases of homicide. *Lewallen v. State,* 6 Tex. App., 475; *Harmon v. State,* 40 Tenn., 242; *Kepp v. Quallman,* 68 Wis., 451. See, also, 3 Cyc., p. 1056, and cases cited.

"When there is evidence of self-defense, previous threats are admitted as tending to show the reasonableness of defendant's apprehension that he was about to suffer death or great bodily harm. But in *State v. Skidmore,* 87 N. C., 509, and *State v. Norton,* 82 N. C., 628, evidence of previous threats was excluded, upon the ground that in a 'simple assault and battery the guilt or innocence of the defendant depended upon the facts and circumstances immediately connected with the transaction.' The ruling of his Honor in this case, in not allowing the jury to consider the threats as substantive evidence, was evidently based upon the opinions in the two cases just mentioned. Is the rule enunciated in these cases applicable to the case at bar? The ruling in *Skidmore's case* is based entirely on *Norton's case.* The principle is not discussed at all. And the facts in *Skidmore's case* bear very little resemblance to the facts of this case. There the defendant was not indicted for an ordinary assault and battery, nor for an assault with a deadly weapon, but for wilfully maiming the prosecutor by biting off his ear. The deed was done, not in the beginning, but in the very heat of the fight, while the parties were rolling upon the ground, locked in a savage embrace. And it is impossible to see how something the prosecutor had said some time before could have in any way

STATE *v.* KIMBRELL.

influenced, much less justified, the conduct of the defendant when he gave the "deadly bite."

"*Norton's case* is distinguishable from ours in three particulars:

"1. There the threats proceeded from the defendant.

"2. It was a case of simple assault and battery, no deadly weapon being used.

"3. There was no evidence or suggestion of self-defense."

"Every opinion of the Court is predicated upon and is to be considered in the light of the facts then before the Court. And, in view of this principle, the *decision* of the Court in *Norton's case* is not applicable to the case at bar. Here the defendant was indicted for an assault with a deadly weapon. The weapon was used in the very beginning of the fight. The contention of the defendant is that he brought his pistol into action because the conduct of the prosecutor when he grabbed him and said, "Now, G— d— you, I will settle with you," in connection with the threats which the prosecutor had previously made against him, and the fact that the prosecutor, when drinking, was a dangerous man, led him to reasonably believe that he was in danger of death or great bodily harm. Does the fact that no one of the bullets struck a vital spot deprive defendant of the benefit of this evidence? If so, it would seem that a twitch of a muscle (or a sudden shifting of the human body) can change a rule of law."

"It may be that it is in the interest of a sound public policy to limit the admission of threats to cases of homicide."

"It is with extreme reluctance and diffidence that we take this view, but the Voice said to John, 'What thou seest, write.' "

We see from this admirable presentation of the point involved in the case at bar that not only is the right of the defendant to have the benefit of the excluded evidence well sustained by reason, but also by the highest and best authorities. The cases cited by the Court to support its conclusion are distinguishable from this case in their facts, and, besides, no sound or permissible reason is given for the principle as stated therein, which is gratuitously asserted, without the citation of any authority or any discussion of the matter. The cases of *State v. Norton,* 82 N. C., 628, and *State v. Skidmore,* 87 N. C., 509, are sufficiently discussed by the Attorney-General and their inapplicability to the present case clearly demonstrated. In *State v. Harrell,* 107 N. C., 946, we quote the *syllabus* of the able and learned reporter, Mr. Davidson, who always stated the very point decided in a case with discrimination and accuracy: "Where one engages in

a fight willingly, he is guilty of an affray, and it is immaterial that he fought under a reasonable apprehension that his adversary had formed a purpose to make a violent assault upon him; nor is it any defense that during the encounter he fired a shot at his enemy, under the belief that he was in great bodily harm." In the opinion of the Court, by *Chief Justice Merrimon,* he says: "The evidence rejected could not prove that they did or.did not so fight, nor could it prove that they fought only in their own defense. The apprehensions of the witness, and the grounds of them, did not enter into and make up an element, or give quality thereto, of the offense, nor did these at all relieve him and his sons from guilt, if they fought as charged. Evidence of what was done, or attempted to be done or said, or what was not done or not said by the parties at the time of the fight, just before it began, during its progress and just at its close—such things as made a part of the *res gestae*—was pertinent and relevant to prove the offense charged or the innocence of the parties. As to that offense, no matter what may have been their intent, or the provocation to them, or their fears or apprehensions, *if they fought otherwise than on the defensive,* such evidence might be pertinent and important in some classes of cases. This is not one of them. *State v. Norton,* 82 N. C., 628; *State v. Downing,* 74 N. C., 184. Nor could the belief of the witness, in the course of the conflict, that he and his sons were about to be shot or suffer great bodily harm, prove that he and they fought only in their.own defense. However fiercely and aggressively he might have joined in the fight, he might have had such belief, but this would not prove that he was on the defensive. The surrounding facts and circumstances—not his simple belief—constituted evidence to show that he fired his gun, not as an active, aggressive participant in the fight, but only on the defensive."

The facts as reported in that case plainly show that the threat proposed to be proven was not against Clingman Harrell, the father of his co-defendants, but against his sons, or "boys," and were not communicated to them. The reporter states that "all the parties, it appeared from the evidence, fought willingly, the appellants successfully wounding both their opponents." So there was no semblance of self-defense, and the evidence was not circumstantial. This case, therefore, fails as a precedent or authority, when tested by the rule laid down in *Turpin's case, supra.* Even in *State v. Harrell, Justice Avery,* an able and painstaking jurist, as we all know, dissented from the opinion and conclusion of the Court. In *State v. Goff,* 117 N. C., 762, the last case cited by the Court, the opinion was delivered by

*Justice Avery,* who had dissented in *Harrell's case.* A bare perusal of *Goff's case* will show that the question herein presented was not raised.

In the very able and learned brief of the defendant's counsel my views are so clearly stated, with a full citation of authorities sustaining them, that I am sure it will not be "out of place" or prolong this opinion·too much to quote therefrom what relates to the competency and relevancy of the rejected testimony. It is as follows: "However the rule may be, in a case of *simple* assault, upon an indictment for an assault with a *deadly* weapon, used in such a way as *is calculated to produce death,* defendant ought to be permitted to prove every fact in justification of his act that he would be allowed to prove upon an indictment for *slaying* his antagonist; otherwise it would be safer*to kill him outright than to wound him. As the law admonishes him who strikes in self-defense to be careful of his blows and give no more than are necessary to protect life and limb, surely it will not be guilty of the glaring inconsistency of denying to him who thus strikes, but not fatally, the benefit of every principle of law and rule of evidence it would accord to him if his blows should prove deadly."

"The defendant's guilt or innocence depends solely upon whether he acted and was entitled to act from a motive of self-defense. 'It is sound sense and, we think, sound law, that, before a jury shall be required to say whether the defendant did anything more than a reasonable man should have done, under the circumstances, it should, as far as possible, be placed in the defendant's situation, surrounded with the same appearances of danger, with the same degree of knowledge of the deceased's probable purpose, which the defendant possessed.' *Turpin's case,* 77 N. C., at p. 477."

"This could not be done unless the jury had been permitted to consider evidence of threats for the purpose of showing the grounds of the defendant's apprehension that he was about to be feloniously assaulted when he fired the several shots. In line with this reasoning are the cases of *People v. Tillman* (Mich.), 92 N. W., at p. 500; *Galbraith v. Fleming* (Mich.), 27 N. W., p. 581; *Fields v. State* (Fla.), 35 So., at p. 187; 1 Enc. Ev., p. 1013. The defendant offered evidence tending to show that, but a very short time after the threats were made and communicated to him, the prosecutor was guilty of an assault upon him, and it therefore became material to couple to this overt act the previous threats of violence made by the prosecutor against the defendant, for the purpose of sustaining his contention that he

had a well-grounded fear that the prosecutor was about to commit a *felonious* assault upon him. If there was *any* evidence to go to the jury in support of this contention, then it was for the *jury,* and not for the *court,* to pass upon the question of his *motive* in firing the shots, as well as the *reasonableness* of the grounds of his apprehension. *State v. Nash,* 88 N. C., 618; *State v. Harris,* 119 N. C., 861; *State v. Hough,* 138 N. C., 663; *State v. Blevins,* 138 N. C., 668; *State v. Castle,* 133 N. C., 769; *State v. Clark,* 134 N. C., 699; *State v. Barrett,* 132 N. C., 1005. So, also, is the question of excessive force for the *jury,* and not for the *court.* *State v. Dixon,* 75 N. C., 275; *State v. Bullock,* 91 N. C., 614; *State v. Goode,* 130 N. C., 651; *State v. Taylor,* 82 N. C., 554."

The Court is deciding in this case a most important principle, which excludes evidence of threats in the trial of an indictment for an assault with a deadly weapon, though such evidence is admitted to be competent in cases of homicide, and the decision is practically based upon the ground, when the reason for admitting it in homicide cases is clearly applicable, that the bullet or other deadly weapon used by the defendant did not inflict a mortal wound. It is so convincing to my mind that such is not the law, I would assert, but for the great respect I entertain for my brethren and my knowledge of their superior ability and learning, that the conclusion drawn from their reasoning, which is really nothing more than a bare assertion, is lame and impotent.

In this case it appears that both the Attorney-General and the defendant's counsel, all able and learned criminal lawyers, agree, contrary to the decision of this Court, that an error was committed by the court below in excluding the testimony offered by the defendant. I concur in opinion with the counsel for the State and the counsel for the defendant, who, as I have said, agree that there should be a new trial because of the alleged error.