STATE OF NORTH CAROLINA v. ERNEST BEASLEY, SR.

AND

STATE OF NORTH CAROLINA v. STANLEY LEE BEASLEY

No. 681SC435

(Filed 31 December 1968)

**1. Mayhem § 1— elements of crime of maliciously maiming a privy member — G.S. 14-28**

Elements of the offense of maliciously maiming a privy member as condemned by G.S. 14-28 are: (1) the accused must act with malice aforethought, (2) the act must be done on purpose and unlawfully, (3) the act must be done with intent to maim or disfigure a privy member of the person assaulted, and (4) there must be permanent injury to the privy member of the person assaulted.

**2. Mayhem § 1— maiming privy member without malice aforethought — G.S. 14-29**

The offense of maiming a privy member condemned by G.S. 14-29 is a lesser included offense of G.S. 14-28, proof of malice aforethought, or of a preconceived intention to commit the maiming of the privy member, not being necessary to conviction under G.S. 14-29.

**3. Criminal Law § 104— nonsuit — consideration of evidence**

In passing upon a motion for nonsuit, the court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment thereon and every reasonable inference therefrom; only the evidence favorable to the State will be considered, and defendant's evidence in conflict with that of the State will not be considered.

**4. Mayhem § 2— maiming of a privy member — sufficiency of evidence**

In a prosecution for maiming a privy member without malice aforethought, defendant's motion for nonsuit is properly denied where the State's evidence tends to show that defendant waited for and intercepted the prosecuting witness, viciously and brutally beat the prosecuting witness and threw him about the ground, and that defendant jabbed his knee to the groin of the prosecuting witness, injuring his testicle and necessitating its surgical removal.

**5. Mayhem § 2; Criminal Law § 105— prosecution for maliciously maiming privy member — nonsuit where evidence sufficient to show maiming without malice**

In a prosecution upon an indictment charging a malicious maiming of a privy member in violation of G.S. 14-28, defendant's motion for nonsuit of the "felony charge" is properly denied where there is sufficient evidence to support conviction under G.S. 14-28 of maiming a privy member without malice aforethought, both offenses being felonies, and the offense condemned by G.S. 14-29 being a lesser included offense of G.S. 14-28.

**6. Mayhem § 2— presumption of intent to disfigure**

An intent to maim or disfigure a privy member is *prima facie* to be inferred from an act which does in fact disfigure, unless the presumption be repelled by evidence to the contrary.

**7. Criminal Law § 9— aiders and abettors**

When two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty without regard to any previous confederation or design.

**8. Criminal Law § 9— aiders and abettors**

A person aids or abets in the commission of a crime when he shares in the criminal intent of the actual perpetrator, and renders assistance or encouragement to him in the perpetration of the crime.

**9. Mayhem § 2; Criminal Law § 9— aiding and abetting in offense of maiming a privy member — sufficiency of evidence**

In a prosecution for maiming a privy member without malice aforethought, evidence tending to show that a father and son waited in a position to intercept the prosecuting witness, that the son assaulted and committed the offense of maiming a privy member of the prosecuting witness, that the father stood between the gathering crowd and the altercation to prevent any interference and struck the brother of the prosecuting witness to prevent his interference *is held* sufficient to be submitted to the jury on the issue of the father's guilt as an aider and abettor in the offense of maiming a privy member.

APPEAL by defendants from *Fountain, J.,* 2 September 1968 Session, CURRITUCK Superior Court.

This appeal arises from four criminal charges; two against each defendant. In case No. 480, Ernest Beasley, Sr. was charged with an assault upon Robert Lee Broome on 29 May 1968, inflicting serious bodily injury, a general misdemeanor. In case No. 516, Ernest Beasley, Sr. was charged with maliciously maiming Norman Steven Broome on 29 May 1968, with malice aforethought, a felony. In case No. 481, Stanley Lee Beasley was charged with an assault upon Norman Steven Broome on 29 May 1968, inflicting serious bodily injury, a general misdemeanor. In case No. 515, Stanley Lee Beasley was charged with maliciously maiming Norman Steven Broome on 29 May 1968, with malice aforethought, a felony. The four cases were consolidated for trial.

Ernest Beasley, Sr. was 41 years of age, and the father of Stanley Lee Beasley, who was 19 years of age. Norman Steven Broome was 15 years of age, and was a brother of Robert Lee Broome, who was 14 years of age.

On 29 May 1968, the last day of school at Moyock Elementary School in Currituck County, Ernest Beasley, Sr., drove his automobile to the school at about 11:30 a.m. to pick up two of his children, ages 12 and 13. He parked on the school grounds at the south end of the building and waited while the principal sent his children out. While

Beasley, Sr. was waiting at the school, a Mrs. Ferebee also came to the school to pick up her children. Stanley Lee Beasley, the 19 year old son of Ernest Beasley, Sr., was in the car with Mrs. Ferebee. After Mrs. Ferebee arrived there was some conversation between the occupants of the two cars.

Stanley Lee Beasley then got into the car with his father and when the 12 and 13 year old Beasleys came out of the school building and joined their father and older brother, Beasley, Sr., with his three sons in the car with him, drove to a Mr. Chalk's to get some cigars. He then drove back and parked across the street from the schoolhouse. Up to this point there was no substantial conflict in the evidence as to what transpired.

The State's evidence tended to show that about a month before the last day of school a controversy had developed between the Beasleys and the Broomes over the ownership and right to possession of a baseball glove. On the particular day in question the State's evidence tended to show: That the Beasleys' car was parked on the opposite side of the street from the schoolhouse, in the route the Broome children usually walked on their way home from school. That the Beasleys were seated in their car as Norman Steven Broome approached the street. That Stanley Lee Beasley stepped out of the car and called to Steven Broome to wait, saying, "I want to talk to you." Steven waited at about the center of the street and when Stanley got up to him Stanley said something about Steven beating on his brother. Steven denied this, Stanley called him a liar and hit him three or four times with his fist. The remainder of the event is best described in the testimony of Steven Brooms as follows:

"Q.   Then what occurred?

"A.   Well, he began to sling me around, and I began to hit the ground, and come back up, trying to get away, and as soon as I would get to my feet I would go back down again.

"Q.   Did he hit you any more at this time? While he was slinging you around?

"A.   I don't recall. He may have.

"Q.   Do you remember how many times he threw you around, and how many times you got up?

"A.   No, sir.

"Q.   Was it more than once?

"A.   Yes, sir.

"Q.  What else, if anything, did he do to you?

"A.  Well, after I remember being right by the little walk pavement in front of the Woman's Club, little concrete pavement, and then I went to get up one time on my feet and he grabbed me by my shoulders, and snatched me to him, and kicked me, I mean kneed me.

"Q.  Where did he knee you?

"A.  In my testicles.

"Q.  How many times?

"A.  Once.

"Q.  With reference to whether the blow was relatively mild, or hard, can you describe it?

"A.  It was hard. I mean it was a feeling I had never been hurt — I had never had anything to hurt me that bad.

"Q.  What did you do after he kneed you?

"A.  I went straight to the ground.

"Q.  What happened after you fell to the ground?

"A.  Well, then he tried to stomp me.

"Q.  How many times?

"A.  I don't remember, about four.

"Q.  I ask you whether or not he did in fact stomp you?

"A.  No, sir, he never hit me.

"Q.  Why not?

"A.  I began to roll to try to get out of his way.

"Q.  What else, if anything, did he do after you rolled out of his way when he tried to stomp you?

"A.  I finally got up on one knee, and was trying to get up, and he pulled me on up and slung me up against the car, and hit me a couple of more times in the face and in the stomach.

"Q.  Was anyone else there in the road where you all were having this difficulty?

"A.  After he slung me up against the car, and hit me a couple of times, he throwed me on the ground, and he climbed on top of me, and I remember Annie Ferebee coming up there and sticking her finger right in my nose.

"Q. Where were you when Mrs. Ferebee stuck what, her finger next to your nose?

"A. She stuck her finger next to my nose.

"Q. Where were you when she stuck her finger in your nose?

"A. I was down on the ground, with Stanley on top of me.

"Q. Do you know where she came from?

"A. No, I don't. She just up and appeared.

"Q. Had you seen her before this difficulty started between you and Stanley?

"A. Not that day.

"Q. After he threw you on the ground this last time, and Mrs. Ferebee stuck her finger in your nose, what else, if anything, occurred then?

"A. Well, for some reason or other, I don't remember why —

"Q. He did what?

"A. For some reason or other he got up, and I got up, and I was trying to get away, and then my testicles were hurting me so bad then that I couldn't even hardly walk, and then he hit me a couple of more times, and finally I got out of his range.

"Q. And where did you go?

"A. I went straight home.

"Q. Had you known Stanley Beasley before this?

"A. No, sir, not that I can recall. I don't think I ever saw him before in my life."

The State's evidence further tended to show that Ernest Beasley, Sr., got out of the car and stood between the altercation and the crowd gathering on the school grounds. That Robert Lee Broome went over to the scene and told Stanley Beasley to get off his brother, and Ernest Beasley, Sr., hit Robert Lee with his fist, knocking him to the ground, unconscious, and damaging his glasses and hearing aid. That Ernest Beasley, Sr., did not at any time try to stop his son Stanley Lee from fighting Steven Broome. That as a result of the blow inflicted by Stanley Lee Beasley it was necessary for Steven Broome to undergo surgery for the removal of one testicle.

The evidence for the defendants tends to show: That the Beasleys were waiting for Mrs. Ferebee to get her children so they could follow her home because she was afraid she might run out of gas.

That while they were waiting, Stanley Lee was leaning against the front of the Beasley car. That Steven Broome came out of school, walked up to Stanley, cursed him and hit him about the same time. That a fight ensued and while Stanley was trying to protect himself from being "kneed in the groin" someone shoved Steven Broome into Stanley's knee causing any injury Steven may have sustained.

The evidence for defendants further tends to show that Ernest Beasley, Sr. did not at any time strike Robert Lee Broome, and did not see anyone else strike him.

The jury returned verdicts as follows:

Case No. 480 — State v. Ernest Beasley, Sr., guilty of assault.

Case No. 516 — State v. Ernest Beasley, Sr., guilty of malicious maiming without malice aforethought.

Case No. 515 — State v. Stanley Lee Beasley, guilty of malicious maiming without malice aforethought.

Case No. 481 — State v. Stanley Lee Beasley, dismissed by the Court because the same elements are incorporated in the offense charged in case No. 515.

Judgment of confinement for a period of not less than seven nor more than ten years was entered in case No. 515 (Stanley Lee Beasley); judgment of confinement for a period of not less than seven nor more than ten years was entered in Case No. 516 (Ernest Beasley, Sr.); and judgment of confinement for a period of thirty days was entered in case No. 480 (Ernest Beasley, Sr.) to run concurrent with the sentence in case No. 516. From the verdicts and the judgments both defendants appealed.

*T. W. Bruton, Attorney General, by James F. Bullock, Deputy Attorney General, for the State.*

*Leroy, Wells, Shaw & Hornthal, by Dewey W. Wells, for the defendants.*

BROCK, J.

Each defendant presents as his first assignment of error the denial by the court of their respective motions for nonsuit made at the close of the State's evidence and again at the close of all of the evidence. Their argument is that there is not substantial evidence of each of the elements of the offense of malicious maiming, with or without malice aforethought. And Ernest Beasley, Sr., argues further that the State failed to offer evidence that he maimed or aided and abetted in maiming.

[1]  An examination of the composite of the North Carolina opinions dealing with the offense of maiming discloses the following to be the elements of the offense of maiming a privy member as condemned by G.S. 14-28:

    (1)  The accused must act with malice aforethought.

    (2)  The act must be done on purpose and unlawfully.

    (3)  The act must be done with intent to maim or disfigure a privy member of the person assaulted.

    (4)  There must be permanent injury to the privy member of the person assaulted. See *State v. Bass,* 255 N.C. 42, 120 S.E. 2d 580; *State v. Malpass,* 226 N.C. 403, 38 S.E. 2d 156; *State v. Skidmore,* 87 N.C. 509; *State v. Ormond,* 18 N.C. 119; *State v. Crawford,* 13 N.C. 425; *State v. Evans,* 2 N.C. 281.

[2]  The offense of maiming a privy member condemned by G.S. 14-29 is a lesser included offense of G.S. 14-28, and for a conviction under G.S. 14-29 proof of malice aforethought, or of a preconceived intention to commit the maiming of the privy member, is not necessary. *State v. Girkin,* 23 N.C. 121.

[3, 4, 9]  In passing upon a motion for nonsuit the court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment thereon and every reasonable inference therefrom. Only the evidence favorable to the State will be considered, and defendant's evidence in conflict with that of the State will not be considered. 2 Strong, N. C. Index 2d, Criminal Law, § 104, p. 648. When the evidence favorable to the State is viewed in accordance with this principle it will justify a finding: That Ernest Beasley, Sr., and his nineteen year old son Stanley Lee parked their car and waited in a position to intercept Norman Steven Broome, a fifteen year old elementary school student, on his way home from school. That they did this because of some earlier conflict between Broome and one of the younger Beasley boys over a baseball glove. That when Broome started home Stanley Lee Beasley intercepted him and viciously and brutally whipped him with his fists, jerked and threw him about on the ground, held him while he jabbed his knee to his groin injuring his testicle, tried to "stomp him" while he was on the ground, pulled him up from the ground and hit him more with his fists while he was against the car, and continued to hit him until he could run away. That during this time Ernest Beasley, Sr., stood between the gathering crowd and the altercation to prevent any interference and when Steven Broome's younger brother Robert tried to come to his aid, Ernest Beasley, Sr.,

viciously struck this fourteen year old boy with his fist, rendering him unconscious and damaging his glasses and hearing aid.

[5]    It is not necessary in this case for us to determine whether the evidence is sufficient to support a finding that defendants acted with malice aforethought, or premeditated design; the motion for nonsuit was specifically addressed to a dismissal of the "felony charge," and the offense condemned by G.S. 14-29, a lesser included offense of G.S. 14-28, is also a felony. Therefore, maiming a privy member without malice aforethought being a lesser included offense of maiming a privy member with malice aforethought, if the evidence was sufficient to support a conviction under G.S. 14-29 of maiming a privy member without malice aforethought the trial judge was correct in overruling defendants' motions. 2 Strong, N. C. Index 2d, Criminal Law, § 105, p. 652. Therefore we omit discussion of whether the first element listed above (acting with malice aforethought) is supported by the evidence.

[4, 6]    That the acts of the defendants were on purpose and were unlawful (the second element listed above) is clearly supported by the evidence. That the acts of the defendants were with intent to maim or disfigure a privy member (the third element listed above) is *prima facie* to be inferred from an act which does in fact disfigure, unless the presumption be repelled by evidence to the contrary. *State v. Girkin*, 23 N.C. 121; *State v. Crawford*, 13 N.C. 425; *State v. Evans*, 2 N.C. 281. That there was permanent injury to the privy member (the fourth element listed above) is clearly supported by the testimony of Dr. Jenkins that the testicle had a large stellate laceration which was obviously from trauma, and necessitated the surgical removal of the testicle. There was no error in the refusal to nonsuit the felony charge against Stanley Lee Beasley.

[7, 8]    "It is thoroughly established law in this State that without regard to any previous confederation or design, when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty." *State v. Keller*, 268 N.C. 522, 151 S.E. 2d 56. "A person aids or abets in the commission of a crime within the meaning of this rule when he shares in the criminal intent of the actual perpetrator, and renders assistance or encouragement to him in the perpetration of the crime." *State v. Bruton*, 264 N.C. 488, 142 S.E. 2d 169.

[9]    The evidence in this case clearly supports a finding that Ernest Beasley, Sr., was present at the time Stanley Lee assaulted Norman Steven Broome; that he gave active encouragement to Stanley Lee by his failure to try to stop the altercation and by his

preventing others from interfering in the altercation; and that he made it known to Stanley Lee that he was standing by to render assistance if necessary. Such findings would constitute aiding and abetting by Ernest Beasley, Sr., and would make him a principal, equally as guilty as Stanley Lee. There was no error in the refusal to nonsuit the felony charge against Ernest Beasley, Sr.

We have carefully examined the remaining assignments of error and find them to be without merit.

No error.

BRITT and PARKER, JJ., concur.