STATE v. JOHN B. TURPIN.

*Murder—Evidence—General Character—Uncommunicated Threats.*

1. To the general rule that in trials for homicide, evidence of the general character of the deceased as a violent and dangerous man is inadmissible, there are two exceptions:

(1.) Such evidence is admissible where there is evidence tending to show that the killing may have been done from a principle of self perservation;

(2.) Such evidence is admissible where the evidence is wholly circumstantial and the character of the transaction is in doubt.

2. If the killing is done under such circumstances as to create a doubt as to the character of the offence committed, the general character of the deceased may be shown, *if such character was known to the defendant.*

3. On a trial for murder, there was evidence of threats made by deceased against defendant and communicated to defendant; there was also evidence that the deceased had followed defendant to the house and that a rock was used by deceased upon defendant's head during the fight, but it did not clearly appear by whom the rock was introduced into the fight, the evidence upon which point was circumstantial. The defendant offered evidence of threats made by deceased but not communicated to defendant, which was excluded; *Held,* that the evidence of uncommunicated threats was admissible:

(1.) To corroborate the evidence of communicated threats;

(2.) To show the state of feeling of the deceased toward the defendant, and the *quo animo* with which he had pursued defendant to the house;

(3.) As one of the circumstances tending to show who introduced the rock into the fight, the evidence upon that point being wholly circumstantial.

(*Bottoms* v. *Kent,* 3 Jones, 154; *State* v. *Hogue,* 6 Jones, 381; *State* v. *Floyd, Ibid,* 392; *State* v. *Tackett,* 1 Hawks, 210; *State* v. *Dixon,* 75 N. C. 275; cited, distinguished and approved; *State* v. *Barfield,* 8 Ire. 344, modified.)

INDICTMENT for Murder tried at Spring Term, 1877, of HAYWOOD Superior Court, before *Henry, J.*

The defendant was indicted for killing one Creighton Morrow, and on the trial in the Court below His Honor refused to admit evidence of the general character of the deceased for violence, and also refused to admit evidence of threats made by the deceased, which had not been communicated to the defendant. The case is sufficiently stated by Mr. Justice BYNUM in delivering the opinion of this Court. The jury found the defendant guilty of manslaughter. Judgment. Appeal by defendant.

- *Attorney General*, for the. State.
*Messrs. Busbee & Busbee, A. T. & T. F. Davidson* and *J. H. Merrimon*, for the defendant, submitted:

1, The Judge erred in refusing to admit evidence of the character of the deceased. Cases in North Carolina reviewed: In *Tackett's* case, 1 Hawks, 210; *Tilley's* case, 3 Ire. 424; *Barfield's*, 8 Ire., 344; *Hogue's*, 6 Jones, 381; *Floyd's, ibid.*, 396; *Bottoms* v. *Kent*, 3 Jones, 154; the question is not fairly presented, whether or not in case of a mutual combat such evidence is not admissible upon the question of self-defence. In other States (except possibly Massachusetts) wherever such evidence has been excluded, it has been in cases where the question of self defence did not arise. Cases reviewed; *York's*, 9 Metc. 93; *Fields'*, 14 Me; *Pritchett's*, 22 Ala. 39; *Franklin's*, 29 Ala. 14; *Lamb's*, 41 N. Y. 360; *Jackson's*, 17 Mo. 544. Such evidence admitted in some cases in nearly all the States; *Hicks's*, 27 Mo. 588; *Keene's*, 50 Mo. 357; . *Lombard's*, 17 Cal. 316; 41 Cal. 640; *Dumphey's*, 4 Minn. 438; and many others which are cited at length in Horrigan & Thompson's Cases of Self-Defence, under title, *Character*. The evidence is clearly admissible "where the immediate circumstances of the killing render it doubtful whether the act was justifiable or not—(*quære* excusable,") *Lombard's* case; "where the killing is under such circum-

stances as to raise a doubt as to the character of the offence," *Dumphey's* case.

2. The uncommunicated threats are admissible to corroborate evidence of the communicated threats, and to explain the character of the assault made by the deceased, and the motives with which he sought out the prisoner. *Stokes* v. *The People*, 53 N. Y.; *Keener* v. *The State*, 18 Ga. 194; *Haller* v. *The State*, 37 Ind. 57 ; *Cornelius* v. *The Commonwealth*, 15 B. Mon. 539 ; *Campbell* v. *The People*, 16 Ill. 17. (The brief on the Judge's charge is omitted.)

Bynum, J. The prisoner was indicted for murder and was convicted of manslaughter. He relied upon the plea of justifiable self-defence, and to make that defence good, offered testimony of the general character of the deceased as a violent and dangerous fighting man, and also of threats made by the deceased against the prisoner, but which were not communicated to him. The exclusion of this evidence is the subject of exceptions by the prisoner.

If the proposed testimony when admitted could not have reduced the offence below manslaughter, the crime of which he was convicted, then the prisoner has received no prejudice and it was not error to exclude it. We are first to see then whether the testimony offered and rejected would have tended, not to mitigate the offence from murder to manslaughter, but to establish a case of justifiable homicide.

The prisoner alleges that he was drawn into the combat against his consent by the machinations of the deceased with the intent to take his life; and that the combat on his part was in self-defence, retreat was impossible, and the killing was unavoidable and necessary to save his own life. To establish this defence the prisoner introduced testimony showing or tending to show that the deceased had malice towards him; that he had a short time before the homicide threatened to kill him, and particularly if he did not keep

away from Mrs. Tate's, the place where he then was; that the deceased had seen him that evening going in the direction of Mrs. Tate's and had secretly followed him ; that the deceased entered the house suddenly and "mad," and immediately began a quarrel with the prisoner by false accusations, and by charging him with doing the very act for which he had threatened to kill him ; that the deceased was secretly armed with a stone of three pounds weight, with which he began and continued the fight without any notice to the prisoner and before he drew the pistol ; that from the suddenness of the attack, its deadly nature, and from being hemmed up in the house, retreat was impossible; and the pistol was then drawn and discharged upon the deceased in necessary self-defence and to save his life.

In confirmation of this and to show the true character of the struggle and his imminent danger, the prisoner offered to prove the general character of the deceased as a violent and dangerous fighting man, and also to prove other threats which had been made against him by the deceased, but which had not been communicated before the homicide. Was this testimony admissible ?

The *general* rule prevailing in most of the American States is, that such evidence is not admissible, and in this State such a general rule is well established. *State* v. *Barfield*, 8 Ire. 344 ; *Bottoms* v. *Kent*, 3 Jones, 154 ; *State* v. *Floyd*, 6 Jones, 392 ; *State* v. *Hogue*, 6 Jones, 381. But these cases which are cited as establishing a general rule excluding such evidence admit that there may be exceptions to it depending upon the peculiar circumstances of each case. And these exceptions themselves are now so well defined and established by the current of the more recent decisions, that they have assumed a *formula* and have become a general rule subordinate to the principal rule. It is this: Evidence of the general character of the deceased as a violent and dangerous man is admissible *where there is evidence tending to show that*

*the killing may have been done from a principle of self preservation,* and also where the evidence is wholly circumstantial and the character of the transaction is in doubt, as in *Tuckett's case,* 1 Hawks, 210 ; Horrigan & Thompson's cases of Self Defence, 695, and Index, under the head of "Character of the deceased for violence," for reference to the cases at large.

Where one is drawn into a combat of this nature by the very instinct and constitution of his being, he is obliged to estimate the danger in which he has been placed, and the kind and degree of resistance necessary to his defence. To do this he must consider not only the size and strength of his foe, how he is armed, and his threats, but also his character as a violent and dangerous man. It is sound sense, and we think sound law, that before a jury shall be required to say whether the defendant did anything more than a reasonable man should have done under the circumstances, it should, as far as can be, be placed in the defendant's situation, surrounded with the same appearances of danger, with the same degree of knowledge of the deceased's probable purpose which the defendant possessed. If the prisoner was ignorant of the character of the deceased, then the proof of it would have been inadmissible, because his action could not have been influenced by the dangerous character of a man of which he had no knowledge. That is not our case. Here the prisoner was the neighbor of the deceased and was fully cognizant of his violent and dangerous nature. Should this knowledge in the possession of the prisoner and reasonably influencing his actions be withheld from the jury which is to pass upon the criminality of the act of killing ?. The jury must ascertain the true character of the combat ; for if from the nature of the attack there was reasonable ground to believe there was a design to destroy his life or commit a felony upon his person, the killing the assailant would be excusable homicide. And this would be so even though it should afterwards appear that no felony was intended. As if

one comes rushing upon you with a pistol in his hands pointing at your breast and making violent threats against your life, and when he comes in reach you knock him down with a club, and of the wound he dies. This would be excusable homicide although it should afterwards turn out that the pistol was not loaded and the design was only to terrify. Certainly if the appearances of danger are real instead of apparent merely, they are not the less admissible in evidence. The purpose here was to prove not only that the circumstances surrounding the prisoner were such as to induce a reasonable belief of imminent danger, but that they were real; that the deceased had not made empty and unmeaning threats insufficient to move a man of ordinary firmness, but that from his known character as a violent and dangerous fighting man, *a character well known to the prisoner*, the danger was so imminent and unavoidable as to justify the taking of life.

It is true that the character of the deceased *per se* can never be material in the trial of a party for killing, because it is as much an offence to kill a man of bad character as a man of good character. If the killing is done with a felonious intent, the character of the deceased cannot come in question. But if the killing is done under such circumstances as to create a doubt as to the character of the offence committed, the general character of the deceased may be shown, if that character is known to the prisoner; because it then becomes a material, and it may be a necessary fact to enable the jury to ascertain the truth, and as such, it is involved in and becomes an essential part of the *res gestæ*. *State* v. *Dumphey*, 4 Minn. 438; *State* v. *Hicks*, 27 Mo. 588; *State* v. *Keene*, 50 Mo. 357; Am. Cr. L. 296; Wharton on Homicide, 215.

In the more recent trials of capital offences, the laws of evidence which once governed the Courts have been much mitigated from their ancient vigor, and more latitude of in-

vestigation is allowed, in order that the jury may be possessed of the true character of the transaction. And it must be conceded that a strong current of decisions in our sister States has considerably modified the stern rule of evidence as laid down in *Burfield's case*, 8 Ire. 344. The Courts of this State also in subsequent decisions have more accurately defined and explained the limits of the general rule, and pointed out some of the exceptions to it, where evidence of the general character of the deceased would be admissible. *Hogue's case* and *Floyd's case* (6 Jones 381—392.)

It was in evidence that the deceased had a short time before the homicide threatened to take the life of the prisoner if he did not keep away from Mrs. Tate's, which threats had been communicated to him. The prisoner also offered testimony to show other similar threats made by the deceased but which had not been communicated. This evidence was competent and should have been admitted for several reasons

1. The uncommunicated threats were admissible for the purpose of corroborating the evidence of the threats which had already been given.

2. They were admissible to show the state of feeling of the deceased towards the prisoner and the *quo animo* with which he had pursued his enemy to the house.

3. In ascertaining whether the prisoner had acted in self-defense a most material question was, who introduced the rock into the conflict, and when and for what purpose? whether for offence or defence was it used? As to this important inquiry the evidence was wholly circumstantial, and testimony of both the general character and threats of the deceased was competent under the principles laid down in *Tackett's*, *Floyd's* and *Hogue's* cases. If the prisoner entered into the fight armed both with the pistol and the rock, of which there was evidence by his admission that he usually went so armed, then it was a case of murder

or manslaughter, as the jury might consider these with other facts as indicating or not indicating malice. But the prisoner contends that the deceased provoked the fight armed with the rock as was evident from the severe contusions he received in the struggle from some such instrument on the front and side of his head. And to corroborate this view and fix the ownership of the rock, the prisoner offered evidence both of the violent character and deadly threats of the deceased. In this aspect of the case, the threats were equally admissible whether communicated or uncommunicated, and in connection with the other facts indicating a felonious assault upon the prisoner, would constitute a case of murder, manslaughter, or justifiable homicide as the jury under proper instructions might determine upon all the facts. *State* v. *Keener*, 18 Ga. 194 ; *State* v. *Sloan*, 47 Mo. 604 ; *State* v. *Heller*, 37 Ind. 57 ; *Cornelius* v. *Commonwealth*, 15 B. Mon. (Ky.) 539 ; *The People* v. *Scoggins*, 37 Cal. 677 ; *State* v. *Dixon*, 75 N. C. 275 ; 1 Starkie on Ev. 39 ; Roscoe Cr. Ev. 77.

Objections were taken to the charge of the Court but without foundation. The charge was minute, impartial and able, and but for the exclusion of the testimony upon a view of the case which the prisoner had a right to present to the jury, the judgment would be affirmed. What new features the rejected testimony may develope we cannot foresee, but as the case is now presented it has in it more of the elements of murder than of manslaughter or justifiable homicide.

There is error.

PER CURIAM.                    *Venire de novo.*