WILSON LUMBER AND MILLING COMPANY v. J. B. ATKINSON ET AL.

(Filed 22 May, 1913.)

1. **Fraud — Character Witness — Corroborative Evidence—Instructions—Substantive Evidence—Appeal and Error.**

   Where an action is of a civil nature to set aside an agreement for fraud in its procurement, and the party against whom the fraud is alleged has testified, evidence as to his good character is permissible only to corroborate his testimony, and an instruction that the jury may consider it as substantive evidence on the issue of fraud is erroneous.

2. **Account and Settlement—Fraud—Evidence—Questions for Jury —Principal and Agent.**

   The plaintiff had contracted with the defendant for the latter to cut, haul, and deliver a large quantity of timber at a certain

place, and after the expiration of several years it appeared that the plaintiff had overpaid the defendant. An agreement as to the amount was made by the parties, and to secure to the plaintiff the payment thereof a certain quantity of lumber was placed in the hands of a trustee. In his action to set aside this agreement there was allegation and evidence tending to show that the lumber pledged by the plaintiffs was some which the defendant had delivered and the plaintiff had paid for; that this fact was peculiarly within the defendant's knowledge; that upon investigation the overpayment was found to be greater than the sum agreed upon, which fact was also, under the circumstances, peculiarly within the defendant's knowledge: *Held*, evidence sufficient to be submitted to the jury upon the question of defendant's fraud in procuring the agreement of settlement; and further *Held*, under the circumstances of this case, there was evidence of fraud and collusion between the plaintiff's agent, who received the lumber, and the defendant.

3. **Principal and Agent—Adverse Interests—Fraud—Knowledge Imputed.**

Where an agent acts in his own behalf and in a manner antagonistic to the interest of his principal in dealing with another, as in fraud and collusion against the principal, knowledge of the agent of the facts involved in the transaction will not be imputed to the principal, and will not be binding upon him in the absence of other knowledge thereof, express or implied.

APPEAL by plaintiff from *Lyon, J.,* at November Term, 1912, of CALDWELL.

This action was brought to set aside a compromise and settlement between the plaintiff and the defendant J. P. Rabb, made on 29 December, 1909. Plaintiff, during the years 1904, 1905, 1906, and 1907, was engaged in the lumber business, of which J. B. Atkinson, the other defendant, was its manager at Lenoir, N. C. The defendant Rabb cut, sold, and delivered to the plaintiff at Morganton and other points a large quantity of lumber, for which the plaintiff paid him from time to time. At the end of that period the books of the plaintiff showed that the plaintiff had overpaid Rabb for lumber so cut and delivered, in the sum of $4,354.82. Plaintiff alleged and offered proof to show that, while this was the apparent amount due by Rabb, he had in fact received a large payment or credit for lumber which had not been delivered, and the real balance should be

$10,900, instead of $4,354.82, and in addition to this amount thus owing by Rabb to the plaintiff, the latter paid for him four certain notes for the aggregate amount of $1,900, which was not charged on its books against him. Plaintiff further alleges that these items were omitted from the books by reason of fraudulent collusion between Atkinson and Rabb, or by mistake of the parties. It then appears that, on 29 December, 1909, plaintiff and defendant Rabb entered into an agreement for a settlement, by which certain timber was conveyed to J. H. Beall, as trustee, to be sold and the proceeds of sale, together with any cash paid by Rabb, to be applied to the liquidation of Rabb's debt to the plaintiff. This agreement was made for the purpose of "adjusting and settling" the account between the plaintiff and Rabb. Plaintiff alleges that, at the time this agreement was entered into by the parties, it was totally ignorant of the fact that the lumber on the yard at Morganton had been delivered by Rabb, under its contract with him, or that Rabb owed the company a much larger amount than the balance of $4,354.82 recited in the compromise agreement. That these facts were only known to Rabb and fraudulently concealed by him from the plaintiff, whereby it was made to convey its own property for the payment of a debt due by Rabb to it, and that Rabb otherwise suppressed the true facts for the purpose of obtaining an unfair advantage of the plaintiff. Issues were submitted, and upon them the jury returned the following verdict:

1. Did the plaintiff company, at various times prior to 29 December, 1909, advance to the defendant J. P. Rabb money to be used by him in purchasing lumber and timber to be manufactured into lumber by him for the said lumber company? Answer: "Yes."

2. Did the plaintiff and defendant, by contract entered into between them on 29 December, 1909, make a full and final settlement of all matters of account existing between them, growing out of their lumber transactions? Answer: "Yes."

3. Did the defendant Rabb, at the time of making the contract of 29 December, 1909, fraudulently suppress or conceal from plaintiff facts within his knowledge as to the true status of the account between them? Answer: "No."

4. If so, was the plaintiff thereby misled to its injury? (No answer.)

5. Was said contract entered into by mutual mistake as to the true status of the account? Answer: "No."

6. Is the defendant Rabb indebted to the plaintiff; if so, in what amount? (No answer.)

7. Is the plaintiff's cause of action barred by the statute of limitations? Answer: "No."

In the verdict proper, the answer to the first issue is simply "Yes," while the recital of the verdict in the judgment of the court states that it was "Yes, but not as agent." But this discrepancy is not considered material in the view we now take of the case. By the contract with Rabb for cutting the timber and delivering the lumber, it is provided that the lumber shall be considered as delivered and shall become the property of the lumber company when it is piled on the yard.

At the close of the evidence the court ordered a nonsuit as to Atkinson, and the case proceeded as to Rabb with the result above stated. Judgment was entered upon the verdict, and plaintiff having duly excepted to certain rulings, appealed to this Court.

*Mark Squires and A. E. Holton for plaintiff.*
*W. B. Councill and Lawrence Wakefield for Atkinson.*
*W. C. Newland and S. J. Ervin for defendant Rabb.*

WALKER, J., after stating the case: We have stated so much of the pleadings and evidence as is necessary to present clearly one of the exceptions of the plaintiff, which we think was properly taken and should be sustained. Evidence of the general character of the defendant, J. P. Rabb, was introduced, the witnesses testifying that it was good. He had testified himself, at great length, as a witness in his own behalf, and had denied circumstantially the charge of fraud made against him. It was competent to prove his good character so far as necessary to sustain his credibility as a witness, but in his charge to the jury the learned judge expressly permitted the jury to consider his character as a substantial fact involved in the issue of fraud. This is the language of the particular instruction to which ex-

ception was noted: "The defendant Rabb being charged with fraud, evidence of his good character should be considered by you as substantive as well as corroborative evidence in passing on the issue of fraud." This was error. It has been said "that a person did or did not do a certain act because his character would predispose him to do or not to do it, is an inference which, although sometimes logically probative, the English law of evidence, with some exceptions, absolutely rejects in civil cases." 16 Cyc., 1263. The text-writer cites numerous cases in the notes to this passage in support of the proposition, and, among others, several decided by this Court. *Jeffries v. Harris,* 10 N. C., 105; *McRae v. Lilly,* 23 N. C., 89; *Heïlig v. Dumas,* 65 N. C., 214; *Marcom v. Adams,* 122 N. C., 222.

In *McRae v. Lilly, supra, Judge Gaston* applied the rule of exclusion to a case of seduction in these words: "It is also insisted that the judge erred in rejecting the testimony offered by the defendant to show that his general character was that of a modest and retiring man. We are satisfied that there was no error in rejecting the testimony proposed. In civil suits, the general rule is, that unless the character of the party be put directly in issue, by the nature of the proceeding, evidence of his character is not admissible. And no reason is seen why, in this case, there should be an exception to the general rule." More directly to the point is the language of the Court in *Heïlig v. Dumas, supra:* "If such evidence is proper, then a person may screen himself from the punishment due to fraudulent conduct till his character becomes bad. Every man must be answerable for every improper act, and the character of every transaction must be ascertained by its own circumstances, and not by the character of the parties," citing *Thompson v. Bowie,* 4 Wall. (U. S.), 470, and quoting from *Fowler v. Insurance Co.,* 6 Cowen (N. Y.), 673.

The subject is treated exhaustively, with full citations, in *Norris v. Stewart,* 105 N. C., 455, where the defendant was charged with fraud, and testimony as to his good character was offered and rejected. The ruling was approved by this Court, *Justice Shepherd* saying: "As a general rule, evidence of good character is inadmissible, by way of defense, in civil actions in

which a party is charged with a specific fraud, because the character of every transaction must be ascertained from its own circumstances and not from the character of .the parties. Such evidence is not admitted in civil actions unless the nature of the action involves the general character of the party or goes directly to affect it." So, whatever the rule may be elsewhere, the law of this State has been settled by repeated decisions. We need not inquire, therefore, whether the reasons for the rule are sufficient to justify it.

The distinction between civil and criminal cases in this respect was clearly stated by the present *Chief Justice* in *Marcom v. Adams, supra,* approving the rule in civil cases as we have stated it. The court committed a positive error in giving the instruction excepted to, and a new trial must be granted, if it was prejudicial. The defendant, J. P. Rabb, contends that it was harmless, as upon a fair consideration of the facts which the evidence tends indisputably to establish, the defendant was. entitled to the verdict which was rendered by the jury. But we do not understand this to be the state of the evidence, and the plaintiff strenuously insists that, on the contrary, there is strong proof of fraud on the part of Rabb and of a collusive arrangement between him and Atkinson, his codefendant, to cheat and defraud the plaintiff. We might, by a discussion of the testimony, demonstrate that there is evidence for the consideration of the jury upon the question of fraud. If the lumber on the yard at Morganton had been delivered and belonged to the plaintiff, it is strange that, if it had knowledge of the fact, the lumber should have been transferred to the trustee to pay a debt due by Rabb—in other words, that it should pay Rabb's debt, due to it, with its own property. If the lumber did not belong to the plaintiff, not having been delivered, then Rabb has received credit on the books of the plaintiff to which he was not entitled, and, in either view, he would be indebted to the plaintiff, unless the latter is in some way estopped or concluded by the settlement. There is enough on the face of the agreement and in the conduct of the parties to show that the plaintiff did not understand that the lumber had been delivered, and, therefore, that the title had passed to it. It might fairly

be argued that if it did, it would not have arranged to pay a debt due by Rabb to it, and there is evidence, as we look at the case, that Rabb knew that plaintiff was acting upon the false assumption that the lumber was not its property, and yet dealt with the plaintiff in making the settlement, well knowing that plaintiff was acting in ignorance of the facts. The phraseology of the agreement is such as to indicate that plaintiff had some claim on the lumber, which was released, but was not the owner; either that, or it is so ambiguously worded that the jury might have drawn such an inference from it, in view of the other facts and circumstances. If by his conduct and the manner of dealing with the plaintiff in making the settlement, he induced the plaintiff to believe that the lumber belonged to him and not to the plaintiff, and took advantage of his own peculiar knowledge of the true situation, and plaintiff was misled, beguiled, and overreached in the transaction, the law will not permit the settlement to stand in the way of an equitable adjustment between the parties. As was said in *Manter v. Truesdale*, 57 Mo. App., at p. 443: "The general rule is that mere silence cannot be treated as a representation, but a party may put himself in a position where he is bound to speak. The Supreme Court, in the case of *McAdams v. Cates*, 24 Mo., 223, in discussing this subject, said: 'Although many duties must be left by law to the honor and conscience of individuals, the public morals require us to lay down and enforce such rules in relation to the business affairs of men as will secure fair and honorable dealing, as far as this is practicable, consistently with the freedom of individual action and the interests of commerce. If, in a contract of sale, the vendor knowingly allow the vendee to be deceived as to the thing sold in a material matter, his silence is grossly fraudulent in a moral point of view, and may be safely treated accordingly in the law tribunals of the country. Although he is not required to give the purchaser all the information he possess himself, he cannot be permitted to be silent when his silence operates virtually as a fraud. If he fails to disclose an intrinsic circumstance that is vital to the contract, knowing that the other party is acting upon the presumption that no such fact exists, it would seem to be quite as much a

fraud as if he had expressly denied it, or asserted the reverse, or used any artifice to conceal it, or to call off the buyer's attention from it.'" And again: "When the law attaches consequences to silence, it does so, it seems, upon a footing of a breach of duty to speak." See, also, *Thomas v. Murphy,* 87 Minn., 358. It was said, by Lord Cranworth, in Reynell and Sprye, 1 De Gex M. and G., 708: "Once make out that there has been anything like deception, and no contract resting in any degree on that foundation can stand." There is room to argue that Rabb knew that plaintiff, when the agreement for settlement was being negotiated, was evidently misled as to the title of the lumber and was acting in utter ignorance of its rights, while Rabb himself knew whether or not the lumber had been delivered under the contract of 1905, so that the title had passed to the plaintiff, for he was the one to make the delivery. The books of the plaintiff disclosed the fact, perhaps, after an expert's examination of them, conducted through several months, but there is evidence that an ordinary inspection of them would not have discovered the true situation. While notice to an agent is notice to his principal, we cannot hold, under the facts and circumstances of this case, that knowledge of the true title to Atkinson, plaintiff's manager and a director, was notice to plaintiff of such title. If the agent is so circumstanced as to make it his interest to withhold information from his employer, then the rule that notice to him is notice to his principal, or the doctrine of imputed knowledge, does not apply. *Stanford v. Grocery Co.,* 143 N. C., 419, and Tiffany on Agency, 262, 263, where it is said: "The principal is not bound by the knowledge of his agent when it would be against the agent's interest to inform him of the facts. Therefore, if the agent is engaged in perpetrating an independent fraud on his own account, knowledge of facts relating to the fraud will not be imputed to the principal. The principal is not bound, it is said, when the character and nature of the agent's knowledge make it intrinsically improbable that he will inform his principal. Whether the rule or the exception rest upon a presumption that the agent will or will not communicate the facts to his principal

may be doubted. Whatever the reasons for the exception, it is well established. Of course, if the agent is openly acting adversely to his principal, his knowledge will not be imputed to the latter. In such case he is not acting as agent, but on his own behalf." Whether the plaintiff knew of its title to the lumber, or could have known of it by the exercise of ordinary care and reasonable diligence, were questions for the jury, and they were properly submitted to them by the court in this case. It must not be understood that we are even intimating any opinion upon the weight of the evidence or its sufficiency to establish fraud. As the case must be tried again, we would scrupulously refrain from indicating any view upon that question, lest we might prejudice one or the other of the parties. All we decide is that there is evidence in the case, as now presented, upon the issue of fraud, and that it was error to instruct the jury that they should consider what was said by the witnesses in regard to the good character of J. P. Rabb "as substantive evidence in passing upon that issue." We cannot consider this instruction as harmless. It may have had great weight with the jury in deciding with the defendant.

We have examined the evidence very carefully, and think the judge committed error in holding that there was no evidence against the defendant John B. Atkinson. The evidence may not have been either strong or convincing, but we are unable to say that there was absolutely none. He was the general agent of the plaintiff company at Lenoir, and there are facts and circumstances disclosed by the evidence, in regard to his management of its affairs and his relations and dealings with his codefendant, which in our opinion should be submitted to the jury. It might prejudice one or the other of the parties if we discussed the evidence in this connection, or even commented upon it, and for this reason we refrain from doing so.

New trial.