STATE v. DANIEL GIBSON, HENRY BAKER, AND JOHN BAKER.

(Filed 6 April, 1927.)

1. **Criminal Law—Evidence—Identity—Questions for Jury—Nonsuit.**

   Evidence of identity of the defendants as the ones who committed an assault upon the prosecutor with a deadly weapon, C. S., 4213, inflicting injury, is sufficient, which tends to show that the defendants visited him, the prosecutor, at his home, used abusive and threatening language, were traced and found together by the officers of the law soon after the assault, one of them made false statements as to the direction from which they had come; the shotgun they had was warm from firing, and the shells found there were identical with shells which had been fired and were found at the place of the injury, etc., is sufficient to take the case to the jury, upon defendants' motion as of nonsuit thereon.

2. **Criminal Law—Evidence—Malice.**

   Where malice is an ingredient of a criminal offense charged in the indictment, previous threats are admissible thereof, though not admissible as substantive evidence.

APPEAL by defendants from *Midyette, J.,* at August Term, 1926, of HOKE.

The defendants were indicted for a secret assault upon J. A. Brock with a deadly weapon with intent to kill, in breach of C. S., 4213, and were convicted of an assault with a deadly weapon.  From the judgment pronounced, they appealed, assigning error.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Smith & McQueen for defendants.*

ADAMS, J.  The defendants, introducing no testimony, moved to dismiss the action on the ground that the State's evidence did not warrant the verdict.  To establish the identity of the defendants, the prosecution relied upon circumstantial evidence; and as there is no exception to the instructions, the question is whether the evidence is of sufficient proba-

tive strength to sustain the finding of the jury. On this point a concise statement of the proof is essential.

The prosecutor, J. A. Brock, was married to Mrs. W. R. Gibson in September, 1925. The land of her former husband descended to their children upon his death, subject to her "life estate" or "dower rights." Brock cut some logs or timber on the land, and two weeks before the alleged assault, Daniel Gibson and Henry Baker, with two others, went to his home, "raised a fuss," cursed him when ordered to leave the place, and said they would see him later. On Saturday night, 12 June, 1926, between twelve and one o'clock, when Brock, his wife, and his two sons were asleep, his house was attacked and he was shot in the foot. He testified that when he awoke guns were firing and "bullets were raining in there just like hail." When the firing ceased, he went to Raeford and sent officers to "the scene of action." Arriving about two o'clock, the officers found blood on the bed, panes out of the windows, glass on the floor, and pistol balls and buckshot to the number of 195 in the mantelpiece and in other places; and twenty feet to the north of the house they discovered men's tracks, one of which they followed up the road to the mailbox on the turnpike or highway. Returning to the house, they saw two other tracks, one pointing in the same direction, and afterwards turning and leading side by side with another track to the east. These two tracks went through a field and a wood into an old road, half a mile from Brock's house. Here were seen fresh car tracks at the side of the road, and evidence of oil that had leaked— tracks made by a nonskid tire going from this place into the turnpike or highway and on by the mailbox, where, it was testified, the car had stopped. The car track led to Henry Baker's house, and there in a shelter a car was found having the same nonskid tires. The water and the radiator were warm. The three defendants were together in Henry Baker's house when the officers arrived early in the morning. Henry said it was John's car, and that it had been driven in at seven o'clock on the evening before; John admitted the car was his, and said that he had brought it in at seven or eight on the preceding day by way of Blue's Bridge; but when the officer suggested that he was mistaken, he admitted that his statement was not true, and that he had come from Wagram. The arrest was made about eleven or twelve o'clock; guns in Henry Baker's house were examined and showed indications of having recently been shot; and the shells in the gun and those taken from Baker's trunk corresponded with the shells which were found at Brock's house.

The assault was not questioned; and this recital contains evidence which, considered most favorably for the State, was sufficient to justify the jury in identifying the defendants as the assailants. The motion

to dismiss the action was therefore properly denied. *Snider v. Newell,* 132 N. C., 614; *Newby v. Realty Co.,* 182 N. C., 34.

The first six exceptions, together with those designated 32 and 38 and 56 to 61 are eliminated; the seventh is without merit; and those numbered 8 to 15 relate to testimony offered to show malice and motive. True, ordinarily previous threats are not admissible as substantive evidence in a prosecution for assault and battery, but the rule is otherwise where malice, as here, is an ingredient of the offense charged in the, indictment. *S. v. Norton,* 82 N. C., 629; *S. v. Kimbrell,* 151 N. C., 702. The evidence to which exceptions 17 to 29 are addressed was expressly withdrawn from the jury. *S. v. Green,* 92 N. C., 779; *S. v. Turner,* 143 N. C., 642; *S. v. Stratford,* 149 N. C., 483; *Cooper v. R. R.,* 163 N. C., 150. Exceptions 30 and 31 and 39 to 55 impeach the effect of the evidence rather than its competency, that which is the subject of the 51st exception having been afterwards elicited by the defendants. The motion to strike out all evidence relating to the bloodhound was made by the defendants, and as it was finally granted, we discover no way in which they were prejudiced, no sound reason why they should now complain. We find

No error.