HENRY L. NANCE v. HORACE FIKE AND HOWARD NANCE.

(Filed 26 June, 1956.)

**1. Evidence § 19—**

   Where a party testifies as a witness in his own behalf, it is competent for the opposing party to show his general reputation as bearing on his credibility as a witness.

**2. Assault and Battery §§ 3, 13: Homicide § 22—**

   Even in those instances in which an opposing party's reputation as a violent and dangerous fighting man is competent upon the question of self-defense, only testimony as to his general reputation for such traits is admissible, and the admission of hearsay evidence as to particular incidents is prejudicial.

**3. Same—**

   As an exception to the general rule that testimony as to the general reputation of a party is not admissible as substantive evidence, a defendant pleading and offering evidence of self-defense in assault cases, criminal and civil, may offer as substantive evidence, under the general rules applicable in homicide cases, testimony tending to show the bad general reputation of his alleged assailant as a violent and dangerous fighting man and of defendant's knowledge of such general reputation.

**4. Same—**

Testimony of the general reputation of defendant's alleged assailant is competent upon defendant's plea of self-defense upon the question of the existence or nonexistence of a reasonable apprehension by defendant as to imminent bodily harm, and therefore such testimony is competent only when defendant has knowledge of such general reputation, and further, such testimony should be in response to interrogations as to the assailant's reputation as a violent and dangerous fighting man and not in regard to his reputation for "quarrelsomeness," "troublemaking," "high-tempered-ness," "disorder," "disturbances," etc.

**5. Same—**

Where, in an action for assault and battery, both parties rely upon self-defense, but plaintiff offers no evidence that either of defendants had a bad reputation as a violent and dangerous fighting man, defendants' evidence to the effect that each of them had a good reputation for peaceful-ness and quietness is incompetent, since such evidence is admissible solely in rebuttal of evidence of bad general reputation.

**6. Assault and Battery § 3—**

The evidence in this action for civil assault is *held* sufficient to warrant the submission of the case to the jury.

APPEAL by plaintiff from *McKeithen, Special J.,* October Term, 1955, MONTGOMERY.

Plaintiff seeks to recover compensatory and punitive damages on account of alleged assault and battery.

The action arose out of a difficulty originating between plaintiff and defendant Nance in which defendant Fike came to the aid or to the rescue of defendant Nance. Blows were inflicted by fists and by axe handles. This occurred in Troy, North Carolina, on 4 March, 1954, in the place of business of Montgomery Hardware Company, Inc.

The entire capital stock of the hardware company was owned by four members of one family, brothers and sisters, to wit, defendant Nance, the Secretray-Treasurer and General Manager, Mrs. Callie Nance Smitherman, Mrs. Ethel Nance Fike, mother of defendant Fike, and plaintiff, each owning one-fourth. The four stockholders were the directors. In addition to his status as stockholder, plaintiff was a salaried employee. Defendant Fike was a salaried employee. As indicated, defendant Fike is the nephew of the two brothers, plaintiff and defendant Nance.

Prior to 4 March, 1954, there had been much friction between plaintiff and defendant Nance; but, in view of the disposition made of this appeal, the details of such friction and as to what occurred on the occasion of the alleged assault need not be set forth.

Plaintiff offered evidence tending to show that defendants wilfully assaulted him. Defendants offered evidence tending to show that plain-

tiff wilfully assaulted defendant Nance. Plaintiff and defendant Nance each contended that he acted solely in self-defense. Defendant Fike contended that originally he acted solely in defense of defendant Nance, his uncle and the General Manager of the business, and thereafter also in his own defense. Each party contended that he used no more force than was or reasonably appeared to be necessary for the purposes of defense.

The jury, answering separate issues, found that neither of the defendants assaulted plaintiff as alleged in the complaint, and did not reach the issues relating to damages. From judgment in defendants' favor, based on the verdict, plaintiff appealed. His assignments of error include those relating to the admission, over plaintiff's objection, of certain testimony, set forth in the opinion.

*Little, Brock & McLendon and Bynum & Bynum for plaintiff, appellant.*

*R. L. Brown and David H. Armstrong for defendants, appellees.*

BOBBITT, J. Mr. E. L. Wallace, a director of the Bank of Montgomery, offered as defendants' witness, was permitted, over plaintiff's objection, to testify as set out below.

On *direct* examination, he testified that the general reputation of each defendant, for peacefulness and quietness, was good; and that the general reputation of plaintiff, for high-temperedness, turbulence and violence, was bad.

On *redirect* examination, he testified, in part, as follows: "Q. Have you ever heard the Bank Directors discuss Mr. Henry Nance's reputation for turbulence, disorder and violence? A. Yes, sir, I have. Q. What has been their remarks to you concerning that? That is what reputation is based on. A. Well, I've heard Mr. Harris, the Cashier, say— Q. Go ahead. A. He has had some talk with Mr. Harris about considering loans and number of things about the Bank and Mr. Harris' statement to me was that he dreaded to see him come in, that he talked so rough he couldn't get along well with him, and things like that, in the Bank. Q. Haven't you actually been in a Directors' meeting when the plaintiff Henry Nance caused a commotion and disturbance? A. Yes, sir, he had been over at the stockholders' meeting. He asked to be put on as a Director, and a few things like that, and the Bank didn't see fit to do it, and he raised a little fuss."

The testimony of Mr. Wallace, as to what Mr. Harris had told him and as to what occurred when the stockholders of the bank refused to make him a director, was incompetent. Each party having testified, it was competent to show his general reputation as bearing on his cred-

ibility as a witness. *Morgan v. Coach Co.*, 228 N.C. 280, 45 S.E. 2d 339; *Lumber Co. v. Atkinson*, 162 N.C. 298, 78 S.E. 212. In fact, this was done. If evidence as to "peacefulness and quietness" or as to "high-temperedness, turbulence and violence" was competent for any purpose, a subject discussed below, only testimony as to general reputation for such traits .was admissible. Stansbury, North Carolina Evidence, sec. 110, and decisions cited. *A fortiori,* hearsay evidence as to particular incidents was incompetent.

We regard the error in admitting the quoted testimony of Mr. Wallace as sufficiently prejudicial to require a new trial. However, other assignments of error, in respect of the admissibility of evidence, should be noticed.

Ordinarily, evidence of prior threats and of incidents of violence on prior unrelated occasions are competent only if the defendant was present or had knowledge thereof prior to the alleged assault. *S. v. Blackwell,* 162 N.C. 672, 78 S.E. 316. Since the evidence upon the next trial may be different in these respects, we refrain from discussing the proper application of this rule to evidence of this character in the record now before us.

In addition to Mr. Wallace's testimony, defendants were permitted to elicit testimony from their other witnesses to the effect (1) that the general reputation of each defendant for peacefulness and quietness was good, and (2) that the general reputation of plaintiff for turbulence and violence was bad. As to the latter, the questions varied considerably as to the traits involved, *i.e.,* often the word "violence" was omitted; and the examiner joined with the word "turbulence" such words as "quarrelsomeness," "troublemaking," "high-temperedness," "disorder," "disturbances." Indeed, the word "turbulence" was the only word used consistently.

Prior to *S. v. Turpin,* 77 N.C. 473 (1877), in homicide cases involving a plea of self-defense, except where the evidence was wholly circumstantial, testimony as to the general reputation of the deceased as a man of violence was held incompetent. *Ruffin, C. J.,* in *S. v. Barfield,* 30 N.C. 344, had said: "The law no more allows a man of bad temper and habits of violence to be killed by another, whom he is not assaulting, than it does the most peaceable and quiet of men." And the reasoning was that, since the fact and not the fear of an assault extenuated the killing, such testimony was foreign to the issue. He regarded such testimony as having a tendency to divert the jury from the real issue, thereby causing a verdict based largely on the prior general reputation of the combatants rather than on what transpired upon the occasion of the fatal encounter.

Since the evidence in the case at hand is positive and direct as to what occurred on the occasion of the alleged assault, we pass without

discussion decisions to the effect that "where the evidence is wholly circumstantial, testimony of the violent character and threats of the deceased, even if unknown to the prisoner, are admissible as tending to show the inherent probabilities of the transaction." *S. v. Byrd,* 121 N.C. 684, 28 S.E. 353; *S. v. Blackwell, supra; S. v. Hensley,* 94 N.C. 1021; *S. v. Turpin, supra; S. v. Tackett,* 8 N.C. 210.

Since *S. v. Turpin, supra,* where there is evidence tending to show that the killing was in self-defense, the defendant may offer evidence tending to show the bad general reputation of deceased as a violent and dangerous fighting man and the defendant's knowledge thereof. If and when the defendant offers such evidence, but not otherwise, the State may offer evidence· (in rebuttal) tending to show the general reputation of the deceased as a man of peace and quiet. *S. v. Champion,* 222 N.C. 160, 22 S.E. 2d 232; *S. v. Carraway,* 181 N.C. 561, 107 S.E. 142; *S. v. Blackwell, supra.* The evidence is competent as bearing upon the reasonableness of the defendant's apprehension or belief that what he did was necessary to prevent death or great bodily harm. *S. v. Rawley,* 237 N.C. 233, 74 S.E. 2d 620, and cases cited. For the same reason, evidence of prior threats made by the deceased and communicated to the defendant are competent. *S. v. Carraway, supra; S. v. Blackwell, supra.*

Moreover, our decisions are to the effect that such testimony as to the general reputation of the deceased as a violent and dangerous fighting man, may relate to some peculiar trait in respect of violence or some condition under which he became violent, *e.g.,* when drunk, if the evidence in the case on trial discloses the exhibition of such trait or the existence of such condition. *S. v. Carraway, supra; S. v. Sumner,* 130 N.C. 718, 41 S.E. 803; *S. v. McIver,* 125 N.C. 645, 34 S.E. 439.

Generally, the legal principles relating to self-defense are equally applicable when the prosecution is for assault. *S. v. Nash,* 88 N.C. 618; *Saunders v. Gilbert,* 156 N.C. 463, 72 S.E. 610; *S. v. Elmore,* 212 N.C. 531, 193 S.E. 713. *Ashe, J.,* in *S. v. Nash, supra,* says: "And whatever will excuse a homicide, will of course, excuse an assault and battery." In either case, no more force may be used than is or reasonably appears to be necessary for the purpose of defense.

Yet in *S. v. Kimbrell,* 151 N.C. 702, 66 S.E. 614, an assault case, this Court, after referring to the rule as to prior communicated threats in homicide cases, held that such evidence was not admissible in assault cases. *Walker, J.,* dissented. Limited approval of *S. v. Kimbrell, supra,* will be found in *S. v. Gibson,* 193 N.C. 487, 137 S.E. 417; but in that case no question of self-defense was involved. Thereafter, in 1933, such evidence was made admissible by statute in all cases of assault, assault and battery, and affrays, wherein deadly weapons are

used and serious injury is inflicted. Ch. 189, Public Laws of 1933, now G.S. 14-33(c). However, apart from the statute, since the identical questions are involved, we see no sufficient reason for the distinction made in this respect in *S. v. Kimbrell, supra,* between homicide cases and assault cases; and that case may be considered withdrawn as authority for the proposition stated.

*Smithwick v. Ward* (1859), 52 N.C. 64, 75 Am. Dec. 453, an assault case, would seem authority that the testimony now under consideration was incompetent. Certainly, this is true in the absence of a plea of self-defense and supporting evidence. Annotations: 64 A.L.R. 1029; 154 A.L.R. 121. But in *Smithwick v. Ward, supra,* neither the case as reported nor the original record on appeal discloses whether the defendants pleaded self-defense. It may be inferred that the evidence proffered by defendants, similar to that offered by defendants here, was solely for the purpose of minimizing plaintiff's recovery of punitive damages.

We conclude that in assault cases, criminal and civil, when the defendant pleads and offers evidence of self-defense, he may then offer, under the rules applicable in homicide cases, evidence tending to show the bad general reputation of his alleged assailant as a violent and dangerous fighting man and of his knowledge of such general reputation. In rebuttal, the State or plaintiff may offer evidence tending to show the prosecutor's or plaintiff's good general reputation as a peaceful and quiet man.

The foregoing is an exception to the general rule that testimony as to the general reputation of a party is not admissible in a civil action as substantive evidence. 32 C.J.S., Evidence sec. 423; 20 Am. Jur., Evidence sec. 319; Stansbury, North Carolina Evidence, sec. 103, and decisions cited. As to the general rule applicable in criminal cases: *Marcom v. Adams,* 122 N.C. 222, 29 S.E. 333; Stansbury, North Carolina Evidence, sec. 104, and cases cited.

While this exception seems fully justified, we are mindful of the cogent reasoning of *Ruffin, C. J.,* in *S. v. Barfield, supra.* A person of ordinary firmness would have reasonable grounds to apprehend that he was in danger of suffering *bodily harm* only if he knew the bad general reputation of his alleged assailant as a *violent* and *dangerous fighting man.* Consequently, the question should be so restricted. Such words as "quarrelsome," "troublemaking," "high-temperedness," "disorder," "disturbances," tend to divert rather than aid the jury in determining the crucial issue, that is what occurred on the particular occasion; for their probative force tends more strongly to show that plaintiff was generally obnoxious and so ought to have been beaten

rather than to show that defendant acted to defend himself from bodily harm in the exercise of his legal rights.

The word "turbulence" is used often in other jurisdictions. Annotations: 64 A.L.R. 1029; 154 A.L.R. 121. It appears infrequently in our decisions. If used alone as a synonym for "violence," the witness is less apt to understand its import. If used in conjunction with "violence," in a phrase such as "turbulence and violence," it may do no harm for the sense in which it is used is clarified by the word "violence," which in reality is the key word. The formula "violent and dangerous fighting man," firmly established in the homicide cases, is approved. There should be no material departure therefrom. The existence or nonexistence of a reasonable apprehension as to *imminent bodily harm* is the subject to which such evidence relates.

Plaintiff contended that he acted in self-defense. However, he offered no evidence that either of the defendants had a bad general reputation as a violent and dangerous fighting man. Whether, in relation to the issues submitted, it would have been competent for him to have done so, is not material here. In any event, defendants' evidence, available only by way of rebuttal, to the effect that each of the defendants had a good general reputation for peacefulness and quietness, was incompetent.

Since a new trial is awarded for the reasons stated, there is no need to discuss the other assignments of error. In this connection, however, we note defendants' contention that plaintiff's evidence was not sufficient to warrant submission of the case to the jury and that judgment of nonsuit should have been entered; but full consideration of the evidence impels us to the opposite conclusion.

New trial.