STATE OF NORTH CAROLINA v. FARAH N. MABREY

No. COA06-983

(Filed 19 June 2007)

**1. Appeal and Error— preservation of issues—exclusion of evidence—argued on different basis at trial**

Defendant did not preserve for appellate review the question of whether a prior assault by the victim was admissible to rebut evidence of good character where she argued relevancy at trial.

**2. Evidence— prior assault by victim—exclusion as prejudicial**

The trial court did not abuse its discretion by not allowing defendant to testify about a prior assault on defendant by the victim in this case based on the potential prejudicial effect. The trial court's ruling resulted from a process of reasoned calculation, weighing the benefits and costs of the testimony. While the court used the term "certainly outweigh" rather than "substantially outweigh," and the better practice is to use the words of the statute, the record is clear that the court understood and conducted the balancing process required by Rule 403.

Appeal by defendant from judgment entered 4 October 2005 by Judge Michael R. Morgan in Wake County Superior Court. Heard in the Court of Appeals 28 March 2007.

*Attorney General Roy A. Cooper, III, by Special Counsel Caroline Farmer, for the State.*

*Mary McCullers Reece, for defendant-appellant.*

JACKSON, Judge.

Farah N. Mabrey ("defendant") and Benjamin Rice ("Rice") were married for approximately nine years and had three children together. Since their divorce in 2002, defendant and Rice arranged to meet twice per month at 7:00 p.m. in a specific Food Lion parking lot to exchange custody of their children. In early 2004, Rice married his second wife, Karen Rice.

On 7 May 2004, Rice arrived early to the parking lot and parked in the usual location of the custody exchange. At 7:05 p.m., Rice saw defendant enter the parking lot and watched as she drove past Rice and proceeded to the other side of the parking lot. Rice testified that

he was upset by defendant's actions because "[s]he looked right at me and just went right past me. You know, she just didn't park right there where I was at. It's not just because it was inconvenient or anything; it's just she was doing it out of spite." Defendant, meanwhile, claimed she never saw Rice and that she drove to the parking space where they were supposed to meet. However, immediately after the incident, she told the police that Rice "parked on the other side of the shopping center just to be rude."

Rice drove to the other side of the shopping center to meet with defendant and their children. Once there, Rice and defendant began arguing about why defendant had not parked beside Rice. Defendant and Rice also argued over a new pair of eyeglasses for one of their children. Specifically, defendant insisted that Rice owed her $50.00 for the glasses, but Rice stated that he could not pay defendant anything other than his court-mandated child support or else he would be in violation of the court order. Defendant responded by saying, "Well, I'll just take it out your ass." At trial, defendant denied discussing eyeglasses for the children that day.

Rice testified that as he helped the children into his truck, defendant pushed the truck door into the back of Rice's legs. Defendant, who was over seven months pregnant at the time, claimed that she simply put her hands in front of her to stop the door from hitting her after Rice had "swung open the door." She contended it was a reflexive motion to protect herself. Defendant, however, also claimed that the door never hit her. Rice warned her that if she hit him again he would call the police. According to Rice, defendant then pushed him in the back three or four times and repeatedly invited him to "[c]all the cops." As Rice explained, "[S]he did it again and again, and I just went around the truck and I called the cops, and I waited for them to get there." At trial, defendant denied pushing Rice into the truck several times with her hands. Defendant insisted that any physical contact between her and Rice was the result of her trying to protect herself from the possible threat of contact from Rice after Rice "stepped up."

While Rice was calling the police, defendant removed the children from Rice's truck and left with them. Approximately ten minutes later, Officer Marcus A. Bethea ("Officer Bethea") of the Raleigh Police Department arrived at the Food Lion parking lot and informed Rice that defendant was with another police officer at a nearby Exxon gas station. Rice requested that Officer Bethea arrest defendant, but Officer Bethea refused because Rice had no visible injuries.

Rice's wife, whom Rice had called after he called the police, met Rice at the Exxon station and brought a copy of the separation agreement. When Rice's wife arrived, defendant was yelling at Rice, and the police officers "were telling her to be quiet." Defendant admitted to police that she pushed Rice, but stated that she did so only because he pushed her first with his car door. Defendant had no visible injuries. Defendant also stated that Rice "wanted to yell at me and curse at me for no reason, so I just took my kids and left." Conversely, Rice told police officers that

> as always, [defendant] wanted to argue about something. She told me that I owed her $50 for an insurance co-payment for my kids to get glasses. I told her I didn't have any money for her right now and that I didn't want to discuss some silly shit like that. She got upset and began cursing back at me. We both stood here and argued.

After police sorted out the situation, Rice's wife took Rice's two daughters and Rice took his son. The police informed Rice and his wife that they would keep defendant at the Exxon station for a few minutes after Rice and his wife departed the station to help avoid further conflict. As Rice and his wife left the station, defendant "was yelling at the police officers." Officer Bethea testified that throughout the encounter, defendant had been "very upset," had used a "very harsh tone of voice," and had appeared unreasonable and unwilling to resolve the situation. Defendant insisted that she was upset only because of certain remarks and facial expressions, such as "little smirks, like ha-ha, or whatever," that Rice allegedly directed at her at the Exxon station.

When the police finally allowed defendant to leave the station, defendant screeched her tires, "peeling her tires out as she left the parking lot." Defendant denied pulling out of the station so fast that her tires squealed. Shortly thereafter, Officer Bethea responded to another call regarding Rice and defendant, and Officer Bethea was required to facilitate another custody exchange. Officer Bethea noted that defendant's demeanor at this second incident was no different from her demeanor at the Exxon station.

On 7 May 2004, defendant was charged with simple assault, and on 23 November 2004, defendant was convicted in district court. Defendant appealed to superior court, and on 4 October 2005, a jury found defendant guilty as charged. The trial court sentenced defendant to forty-five days in the custody of the Wake County Sheriff, and

the court suspended the sentence and placed defendant on supervised probation for twelve months.

On appeal, defendant challenges the trial court's refusal to permit the introduction of evidence that Rice had assaulted defendant on a previous occasion. Specifically, defendant contends that the evidence was (1) relevant to defendant's claim of self-defense; (2) admissible to rebut evidence of Rice's good character presented during the State's case; and (3) more probative than prejudicial.

[1] As a preliminary matter, we note that defendant has failed to preserve her second assignment of error for appellate review. In this assignment of error, defendant argues that the evidence of the prior assault was admissible to rebut evidence of Rice's good character presented during the State's case. Specifically, defendant contends that the State opened the door to Rice's character, and thus, defendant should have been permitted to testify as to specific acts committed by Rice that would shed a contrary light on Rice's character.

During direct examination of Rice, the following colloquy took place:

PROSECUTOR: And up until this point did you ever put your hands on the defendant?

RICE: Huh-uh.

PROSECUTOR: Why didn't you if she was pushing you up against your truck?

RICE: That's—I don't do things like that. I mean, that's not my nature.

Defendant did not object to Rice's testimony. Later, when defendant stated during direct examination that Rice had pushed her two years prior, the State objected and the jury was excused from the courtroom. When asked what he intended with the particular line of questioning, defense counsel stated,

Your Honor, I'm *only wanting to establish the facts that occurred* at the Food Lion. The only line—or the only testimony that I would—or the only questions that I would ask the defendant would be *questions that would be relevant to her mental state at the time of the incident and to the facts at the time of the incident. . . .*

. . . .

. . . The only type of question that I would have asked would have been, After that, what—*how did that incident affect your mental state at this time.* That would have been the only—that would have been the only type of question that I would have asked and not go into detail as to what happened but *if that incident had any influence on her—her mental state at that time.*

. . . .

. . . Your Honor, I'd just like to say that one incident that is possibly very similar to *this incident could—could possibly affect one's mental state.* It's possibly having a deja-vu type situation where you may be apprehensive about the prior incident no matter how far back it was reoccuring again, especially with the children at hand. . . . *I believe that that particular incident is relevant to show her mental state at that particular time if it was similar to the one prior.*

(Emphases added).

At no point did defendant argue that she was introducing the evidence to rebut the State's evidence of Rice's good character, much less did defendant ever argue that the State opened the door to Rice's character. Defendant, instead, confined her argument to relevancy, insisting that evidence of the assault two years prior was relevant to show defendant's mental state at the time of incident in question. Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure provides that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, *stating the specific grounds for the ruling the party desired* the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1) (2006) (emphasis added). As defendant did not contend before the trial court that such evidence was admissible as to Rice's character based upon the State's opening the door to his character, this issue has not been preserved for our review. *See State v. Williams,* 355 N.C. 501, 565, 565 S.E.2d 609, 646 (2002) (noting that although defendant objected to certain evidence as inadmissible pursuant to Rule 608 and as inadmissible hearsay, he did not object on those specific grounds at trial, and thus, "defendant did not preserve these specific arguments for appellate review."), *cert. denied,* 537 U.S. 1125, 154 L. Ed. 2d 808 (2003). Accordingly, defendant has failed to preserve this issue for appellate review.

**[2]** In her first assignment of error, defendant contends that the evidence that Rice assaulted defendant on a previous occasion was relevant to defendant's claim of self-defense. In her third assignment of error, defendant contends that the probative value of the evidence of the prior assaults was not substantially outweighed by the potential prejudicial effect, and thus, the trial court improperly excluded the evidence pursuant to Rule 403 of the Rules of Evidence. The trial court based its decision to exclude the evidence solely pursuant to Rule 403, and the court did not make any conclusion with respect to whether the evidence of the prior assault was relevant and otherwise admissible. For the following reasons, we hold that the trial court did not err in excluding the evidence pursuant to Rule 403, and accordingly, we decline to reach the issues raised in defendant's first assignment of error.

Relevant evidence, defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," generally is admissible. N.C. Gen. Stat. § 8C-1, Rules 401, 402 (2005). With respect to evidence of prior bad acts, such as the evidence at issue in the instant case, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b).[1]

Pursuant to Rule 403 of the Rules of Evidence, however, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2005). Thus, even assuming *arguendo* that the evidence of Rice pushing defendant two years prior to defendant's trial survives Rules 401 and Rule 404(b), "it still must

---

1. While defendant cites *Nance v. Fike*, 244 N.C. 368, 373, 93 S.E.2d 443, 446 (1956), for the proposition that "in assault cases, . . . when the defendant pleads and offers evidence of self-defense, he may then offer . . . evidence tending to show the bad general reputation of his alleged assault as a violent and dangerous fighting man," *Nance* expressly dealt with "the bad general reputation" of the victim, which would is governed by Rule 404(a) of the Rules of Evidence. *See* N.C. Gen. Stat. §8C-1, Rule 404(a) (2005). Because defendant attempted to offer evidence of a specific act committed by Rice, as opposed to general evidence of a pertinent character trait of Rice, we note that Rule 404(a) is inapplicable.

STATE v. MABREY

[184 N.C. App. 259 (2007)]

withstand the balancing test of Rule 403, pursuant to which 'evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.' " *State v. Locklear*, 180 N.C. App. 115, 122, 636 S.E.2d 284, 289 (2006) (quoting N.C. Gen. Stat. § 8C-1, Rule 403 (2005)). It is well-established that "[a] trial court's rulings under Rule 403 are reviewed for an abuse of discretion. This Court will find an abuse of discretion only where a trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Theer*, 181 N.C. App. 349, 359-60, 639 S.E.2d 655, 662-63 (2007) (internal quotation marks and citations omitted).

In making its determination with respect to the Rule 403 balancing test, a trial court must analyze the "similarity and temporal proximity" between the acts. *State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Thus,

> [w]hen the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the analogy attaches less to the acts than to the character of the actor.

*Id.*

After hearing and considering arguments by the prosecutor and defense counsel with respect to the evidence of the prior assault, the trial court sustained the State's objection to the testimony, stating,

> Well, as to any similarity between the matter at issue and a matter that the witness stated occurred two years ago, the similarities are not sufficiently strong so as to allow the jury to properly hear that. The witness's testimony is that she instinctively put her hand up to keep the door from coming close to hitting her because of her pregnant condition, and she said that the door didn't even hit her hand. So as a result, that is not similar to a situation two years ago where she says that the prosecuting witness allegedly assaulted her. So I would not find them to be sufficiently similar so as to allow the jury to hear something that remote in time, coupled with the fact that, again, the similarity being at best minimal. Any prejudicial effect would certainly outweigh any probative value. So as a result, I will not allow any questioning as to that two years ago.

The trial court's ruling was the process of reasoned decision, weighing the relative benefits and costs of such testimony. The temporal proximity between the incidents was particularly significant because (1) defendant had known Rice for thirteen years; (2) defendant and Rice had met to exchange custody twice per month for a year and a half; and (3) the incident two years prior was the only other instance of alleged assaultive behavior by Rice. Additionally, the prior assault and incident at issue were not sufficiently similar as to warrant significant probative value. Defendant alleged that Rice pushed defendant two years prior to trial. Here, Rice had not pushed defendant, but rather, opened a car door toward defendant and allegedly "was in [her] face." Because of the minimal probative value of the evidence, the trial court properly concluded that the probative value of defendant's testimony concerning the prior assault was substantially outweighed by the danger of unfair prejudice.

We note, however, that the trial court did not specifically state that the probative value of the evidence "substantially outweighed" the potential prejudicial effect. Rather, the court stated that the "prejudicial effect would certainly outweigh any probative value." Although the better practice would be to employ the words used in the statute, the trial court's use of the phrase "certainly outweigh" is sufficiently close to the phrase "substantially outweigh" to make clear that the court conducted the appropriate balancing test mandated by the Rule. *See State v. Harris*, 149 N.C. App. 398, 405, 562 S.E.2d 547, 551 (2002) ("The trial court in the present case made no specific finding that the probative value of evidence . . . outweighed its prejudicial effect. However, as long as the procedure followed by the trial court demonstrates that a Rule 403 balancing test was conducted, a specific finding is not required."); *see also State v. McAllister*, 132 N.C. App. 300, 302, 511 S.E.2d 660, 662 ("*Despite the language used by the trial court in making the ruling*, it is clear from an examination of the record that the trial court understood the standard to be applied under Rule 609 and that the trial court believed the evidence was not necessary for a fair determination of the issue of guilt or innocence." (emphasis added)), *aff'd*, 351 N.C. 44, 519 S.E.2d 524 (1999) (per curiam). Because the record is clear that the trial court understood and conducted the required balancing pursuant to Rule 403, we find no error in the specific language employed by the trial court.

In sum, it cannot be said that the trial court's ruling was "arbitrary" or "manifestly unsupported by reason." Therefore, the trial court did not abuse its discretion in precluding defendant from testi-

fying as to the prior assault based on the potential prejudicial effect when compared with the probative value of such evidence. Accordingly, defendant's third assignment of error is overruled, and we need not reach defendant's remaining assignment of error.

No Error.

Judges HUNTER and TYSON concur.